## MELVILLE SMITH ET AL. *vs.* AUTOMOBILE INSURANCE COMPANY.

First Judicial District, Hartford, May Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued May 3d—decided September 28th, 1928.

*George H. Gilman,* for the appellants (plaintiffs).

*Frank L. McGuire* and *James W. Ryan* of New York City for the appellee (defendant).

WHEELER, C. J. The allegations of the complaint in issue on the trial, so far as essential to the disposition of the appeal, are (a) the breach by the defendant of its agreement of June 27th, 1925, with Hagarty, to fully cover by insurance the steamer Atlantic lying at Charleston, South Carolina, during its voyage from Charleston to Bridgeport, for which defendant issued its binder for $10,000, but has never delivered a policy of insurance in accordance with this agreement, and (b) the sinking of the vessel by reason of the perils of the sea insured against under this agreement after she had commenced her voyage and while loading at North Charleston on July 10th, 1925. The defendant denied the foregoing allegations and alleged affirmatively that

after application was made to it for the insurance upon the Atlantic it notified Hagarty that it would cover the vessel by insurance in accordance with the policy, Exhibit 3, made a part of the answer, which was subsequently issued in accordance with the agreement of the parties. For separate defenses the defendant alleged that at the time insurance was applied for the Atlantic did not proceed on her voyage directly from Charleston to Bridgeport but deviated to North Charleston, which constituted a deviation and avoided the insurance.

Prior to this action Hagarty assigned to plaintiffs such cause of action as he had against defendant by reason of the facts set up in the complaint.

The issues raised by the plaintiffs on the pleadings were, (a) that the agreement between Hagarty and defendant was to fully cover the Atlantic by insurance against the perils of the sea on the trip from Charleston to Bridgeport, and (b) that the Atlantic sank by reason of the perils of the sea after it had commenced its voyage. The issues raised by the defendant on the pleadings were that the contract of insurance between it and Hagarty was that contained in Exhibit 3, and that the voyage had not commenced when the Atlantic sank. The plaintiffs claimed that the defense that the voyage had not commenced was waived by the answer and by the conduct of the defendant after the loss. These particular issues were not raised by the pleadings, but nevertheless were determined by the trial court.

The plaintiffs seek to have the finding corrected in a number of particulars; the most important of these we shall refer to; the other claimed corrections are either inconsequential or not well taken. Paragraph nine recites that Hagarty expected defendant to issue to him, and defendant intended to issue to him, a

policy on the outside vessel form containing the terms and provisions set forth in the policy attached to the answer. The court was justified in its finding as to the intention of the defendant. That Hagarty expected this form of policy to be issued was also a permissible inference. Hagarty stated to the agent of defendant at the beginning of the negotiation for the insurance that he wanted to be fully covered on an annual policy. The agent stated, he would have to refer this to the home office. On June 22d, 1925, he told Hagarty the defendant would only insure the Atlantic on her trip from Charleston to Bridgeport, and on June 24th telegraphed him, "Will cover boat during trip to Bridgeport. . . . Wire sailing date, if satisfactory." Hagarty, on June 26th, wired defendant's agent, "Please cover for $10,000," and the agent replied, "Binding . . . insurance on Atlantic trip to Bridgeport." No specific form of policy was referred to by Hagarty or defendant's agent in the course of these negotiations. A binder in insurance terminology is an agreement to issue a policy of insurance in the usual and ordinary form. The policy which defendant subsequently issued was the policy which was usually and ordinarily issued by defendant and other marine insurance companies for the trip voyage contemplated. Hagarty testified that he expected an inland vessel form of policy providing complete coverage insurance. The court finds, and the finding must stand, that "fully covered," as used in marine insurance, relates to the amount of the policy issued, and that there is no such thing as a "full coverage policy." If Hagarty did expect this form of a policy it was an expectation impossible of realization. But he also testifies he expected the ordinary form of insurance. When an insured requests insurance on a steamer and makes no specification as to the kind of policy except that the steamer

shall be fully insured and not only for a specified trip but on an annual policy and the company notifies him that it will issue a trip policy covering boat if satisfactory to him and he replies "cover for $10,000," the insured will be assumed in law to intend insurance by a policy in the ordinary form. When he specifies that he wishes the steamer "fully insured" he will be assumed to intend by the use of this term the meaning ordinarily used in marine insurance—the amount of the policy to be issued. The finding of the court as to Hagarty's expectation is a necessary inference from the other findings made.

Paragraph fifteen, that Hagarty understood that the policy, Exhibit 3, was the one intended by defendant, finds its support in Hagarty's expectation that the policy would be the ordinary form of policy and in the inference which must be drawn from what had taken place between him and defendant's agent.

Paragraph thirty-four, that Hagarty at the time of the negotiation with the defendant for insurance did not intend to have the Atlantic carry freight on its trip to Bridgeport is not a reasonable inference. Hagarty said nothing of this sort to the agent, or the agent to him. Hagarty testified he intended to carry freight if he got the opportunity when he got to Charleston. When he did arrive he began negotiating for the cargo which he obtained on July 8th. This is all of the evidence upon this point which we have before us and it does not support the inference drawn. The paragraph is corrected by the omission of this inference.

The facts found material to the issues involved in the appeal, with the exception of those relating to the making of the contract of insurance, which need not be repeated, are these: On July 8th, 1925, Hagarty contracted for a cargo for the Atlantic, which on that date left the wharf in Charleston, where she had been

since his purchase of her on June 27th, and proceeded to a nearby wharf in the port of Charleston, and on July 9th took on twenty-five tons of coal. On July 10th she left this wharf and proceeded to a wharf six nautical miles up the river in the port of Charleston for the purpose of loading a cargo. To proceed on a voyage from Charleston to Bridgeport she had to return down the river and thence out through the mouth of the harbor to the sea. When only a part of the cargo had been put aboard the Atlantic she sank and became a constructive total loss. Sometime later defendant tendered Hagarty the policy, Exhibit 3, which he refused to accept, and when defendant demanded payment of the premium due on the policy he did not pay it. Subsequently he did tender the premium, but the tender was declined because the policy had meantime been cancelled. From the time of the binding of the insurance to the time the Atlantic sank through lack of repair she was in no condition to begin the trip from Charleston to Bridgeport. She was not designed to carry freight, either on inland waters or on the high seas, nor was she properly documented and licensed so as to permit her to begin this trip.

There are also inserted in the findings of the subordinate facts statements which are conclusions of law, viz., the Atlantic had not begun her voyage at the time she sank and the defendant never at any time agreed to issue the policy as claimed by the plaintiffs. The facts found by the trial court end the issue upon the pleadings as to what was the contract of insurance between Hagarty and the defendant. It was that contained in Exhibit 3, a policy on the outside vessel form which would ordinarily be issued by the defendant and other companies engaged in marine insurance for the trip contemplated from Charleston to Bridgeport.

The real question upon this appeal is whether the

voyage had commenced at the time of the sinking of the Atlantic. The contract of insurance upon the Atlantic between Hagarty and the defendant was for a trip voyage from Charleston to Bridgeport. A contract of insurance of that description would usually have provided that the voyage was "at and from," or "from" Charleston to Bridgeport. If the policy had been of the "at and from" form the risk, while the ship was in Charleston, would attach as soon as it became effective, which in this case would have been when the binder was issued. "The true rule on this subject," said Judge Kent, "is, that *at* and *from,* when applied to a ship, includes the period of her stay in port from the time of her arrival there." *Patrick* v. *Ludlow,* 3 John. Cas. (N. Y.) 10, 13, and note, p. 14. Arnould on Marine Insurance thus summarizes the rule: "If the ship is insured 'at and from' a home port in which the ship is then lying, the risk commences on the ship immediately upon the execution of the policy, and continues during the whole time the ship remains in her home port in a course of preparation for her voyage." Vol. 1 (6th Ed.) p. 404; see also 3 Kent's Commentaries (14th Ed.) *307; 13 Eng. Rul. Cas. p. 616; MacArthur on Marine Insurance (3d Ed.) p. 81; Richards on Insurance (3d Ed.) §418, p. 588; 3 Joyce on Insurance, §1486; *Motteux* v. *London Assurance Co.,* 1 Atk. 545, 548; *Palmer* v. *Marshall,* 8 Bing. 79, 317. In New York it is also held that the risk does not attach until preparations for voyages are begun. *Snyder* v. *Atlantic Mut. Ins. Co.,* 95 N. Y. 196. But when the policy of insurance provides that the voyage is "from" one port to another the risk only commences when the ship has begun her voyage.

In Laws of England, Earl of Halsbury, Vol. 17, ¶ 768, the English rule is stated to be: "Where the subject-matter is insured 'from' a particular place the risk does

not attach until the ship starts on the voyage." Kent in his Commentaries, Vol. 3 (13th Ed.) *3079, says: "The commencement and end of the risk depend upon the words of the policy. . . . If insurance on a ship be from such a place the risk does not commence until the vessel breaks ground." See also *Nelson* v. *Sun Mut. Ins. Co.,* 71 N. Y. 453; *Union Ins. Co.* v. *Tysen,* 3 Hill (N. Y.) 118. A vessel commences her voyage when she breaks ground or sails, that is, starts from the port at which she lies. A ship will not be held to have broken ground or sailed unless she is ready and equipped for the voyage or at least the first stage of the voyage, been unmoored from the wharf alongside of which she lay and is proceeding upon her course, and her captain or the person in charge of the ship at the time she is unmoored having the intention of having her proceed upon her voyage. Eldridge on Marine Policies (2d Ed.) pp. 134, 135. And *Sea Ins. Co.* v. *Blogg,* L. R. (1898) 1 Q. B. D. 27 and 2 Q. B. D. (C. A.) p. 398, so holds, approving the rule in Phillips on Insurance, Vol. 1 (4th Ed.) ¶ 772: "A vessel has 'sailed' the moment she is unmoored and got under way, in complete preparation for the voyage, with the purpose of proceeding to sea, without further delay at the port of departure." In *Pittegrew* v. *Pringle,* 3 Barn. & Adol. 514, 23 Eng. C. L. 229, it was held as a general principle that if a ship quits her moorings, and removes though only a short distance, being perfectly ready to proceed on her voyage, it is a sailing on the voyage, though she be detained by some subsequent occurrence. It is otherwise if she be not in a condition for the voyage, when she quits her moorings and hoists sail. See also *Union Ins. Co.* v. *Tysen, supra; Bowen* v. *Hope Ins. Co.,* 37 Mass. (20 Pick.) 275; 3 Joyce on Insurance (2d Ed.) §1495; *Bond* v. *Nutt,* Cowp. 601. "The ship is not deemed to have started on the voyage

until she has, being in a complete state of preparation for the insured voyage, quitted her moorings and broken ground." Laws of England, Earl of Halsbury, Vol. 17, ¶ 768, and cases cited. In the appeal in *Sea Ins. Co.* v. *Blogg,* L. R. (1898) 2 Q. B. D. 398, 399, Smith, L. J., says: "The authorities . . . cited . . . shew that the question whether a ship has sailed in such a case depends on the intention with which she was moved from the quay or other place at which she has been loading her cargo." Rigby, L. J., and Williams, L. J., in their opinions both emphasize the necessity of looking to the real intention of the captain or person in command. See also *Cochrane* v. *Fisher,* 1 C. M. & R. (Exch. Rep.) 808, 816. The necessity of having the ship equipped and ready to sail is recognized in *Gilchrist Transportation Co.* v. *Boston Ins. Co.,* 223 Fed. 716; *Ralli* v. *New York & T. S. S. Co.,* 154 Fed. 286; *Steamship Wellesley Co.* v. *C. A. Hooper & Co.,* 185 Fed. 733, 738.

The policy of insurance issued by the defendant to Hagarty was of the "from" form—Charleston to Bridgeport. Under such a policy the risk attached, provided the Atlantic had broken ground, unmooring from her wharf for the purpose of proceeding on her voyage, having been fully equipped as to ship and crew, and ready for the voyage with the required official clearance papers and her captain, or the one in charge of her, intending, when he caused her to be unmoored, to proceed directly on the voyage from Charleston to Bridgeport. When the Atlantic sank she had not left the port or harbor of Charleston; she had merely moved from one wharf to another six miles up the river. She had gone there to take on a cargo, she had not started on her voyage and her captain or the person in charge had not intended to proceed on the voyage until the cargo was loaded and this had not

been completed when she sank. She was in no condition to begin the trip until needed repairs had been made. She was not ready for the voyage, since the required official clearance papers had not, as yet, been obtained. These circumstances plainly show that the captain, or whoever was in charge had not at any time intended to start on the voyage, prior to her sinking. It is a necessary conclusion from these facts that the Atlantic had not commenced her voyage up to the time she sank, consequently the risk of the policy never attached.

Plaintiffs' defense of waiver was not raised by the pleadings. It is based upon the tender by defendant of the policy, Exhibit 3, and the demand for the premium. Both the tender and demand were entirely consistent with the defendant's claim of no liability, because the Atlantic had never commenced her voyage. In paragraph forty-four the trial court has found that the defendant never at any time waived the defense that the Atlantic's voyage had not commenced. Waiver is a fact for the court to find. *Grippo* v. *Davis,* 92 Conn. 693, 696, 104 Atl. 165. The finding as to waiver has not been attacked. Had this ground of appeal been properly before us, error could not have been predicated upon it.

There is no error.

In this opinion the other judges concurred.