WILLIAM NELSON, JR., Appellant, v. THE SUN MUTUAL INSURANCE COMPANY, Respondent.

A policy of insurance upon a ship, as it appeared in the record in an action upon it, contained the usual terms, covenants and conditions, used in policies on voyages from port to port, the names of the ports, were however left in blank, the risk was described as "port-risk in the port of New York."    *Held*, that it was to be presumed that a common printed form designed for voyage policies was used, but that the parties did not intend, and the insurer did not take a risk for a voyage; that the written words "port-risk in the port of New York" controlled the printed part of the policy, and limited and defined the risk insured against.

Also *held*, that the term "port-risk" was a technical term, the meaning of which, as used by underwriters in policies of Marine Insurance, might be proved by experts in the business.

The testimony of experts on both sides concurred, and was to the effect that the term "port-risk" meant a risk upon a vessel while lying in port, and before she had taken her departure on another voyage. It appeared that the vessel cleared for another voyage, and left the pier at which she was lying in tow of a tug, for the purpose of proceeding upon the voyage; a short distance from the pier she struck a rock and was injured; *held,* that as the vessel had taken her departure, and begun her voyage when the accident happened, the policy had ceased to be operative; and that the complaint was properly dismissed.

The distinction between the proof of a usage and proof by experts of the meaning of a technical term or phrase pointed out.

A merchant, called as a witness by plaintiff, testified in substance that he was more or less acquainted with procuring marine policies; that he knew of the phrase "port-risk in the port of New York," but that he had never seen the words "port-risk," or known of its use in a policy or an application for one; he did not testify to any knowledge derived from study as to the meaning of technical terms used in Marine Insurance. The witness was then asked the meaning of the phrase, and the evidence was excluded; *held,* no error; that the witness did not show such knowledge as qualified him to speak as an expert.

Whether one offered as an expert is qualified to speak as such is a fact preliminary to his testifying, to bedetermind by the court upon the trial.

Whether the decision of the trial court is reveiwable here, *quære.*

(Argued December 6, 1877; decided December 18, 1877.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of defendant entered upon a verdict. (Reported below, 8 J. & S., 417.)

This action was upon a policy of marine insurance.

Of a portion of the policy as it appeared in the record, the following is a copy:

"By the Sun Mutual Insurance Company. (Vessel No. 61,408.) Wm. Nelson, Jr., on account of whom it may concern: Loss payable to him or order. Do make insurance and cause to be insured, lost or not lost, at and from October 5, 1867, at noon, to November 5, 1867, at noon. Sum insured, $6,250; *port-risk, in port of New York*, upon the body, tackle, apparel and other furniture of the good ship called the 'Confidence,' whereof is master for this present voyage,      or whoever else shall go for master in the

said vessel, or by whatever other name or names the said vessel, or the master thereof, is or shall be named or called. Beginning the adventure upon the said vessel, tackle, apparel, etc., at and from          aforesaid, and so shall continue and endure until the said vessel be safely arrived at          aforesaid, and until she be moored twenty and four hours in good safety.   And it shall and may be lawful for the said vessel, in her voyage, to proceed and sail to, touch and stay at, any ports or places, if thereunto obliged by stress of weather, or other unavoidable accident, without prejudice to this insurance.   The said vessel, tackle, etc., hereby insured are valued at $30,000, without any further account to be given by the assured to the assurers, or any of them for the same. Touching the adventures and perils which the 'Sun Mutual Insurance Company' is contented to bear and take upon itself in this voyage, they are of the seas, men-of-war, fires, enemies, pirates, rovers, thieves, jettisons, letters of mart and countermart, surprisals, takings at sea, arrests, restraints and detainments of all kings, princes or people, of what nation, condition or quality soever, barratry of the masters and mariners, and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said vessel or any part thereof."

The residue of the policy embraced the ordinary terms, covenants, and conditions of a policy upon a voyage.   The ship was lying at a pier in the city of New York when the policy was issued, having just arrived with a cargo.   She was discharged, fitted for sea, a cargo for Glasgow taken on board; she cleared for Glasgow, and on October 29, 1867, she left her pier ready for sea, and for the purpose of proceeding upon her voyage, in tow of a tug-boat; she had proceeded but a short distance when she was swept by the tide upon a rock and injured.   To recover the loss thus sustained this action was brought.

Upon the trial defendant called witnesses engaged in the business of marine insurance to prove the meaning of the term "port risk."   The evidence was objected to, the objection

overruled, and the testimony received under objection. The substance of the evidence upon this point and upon the other points discussed, sufficiently appears in the opinion.

*Henry J. Scudder*, for appellant. Evidence to explain the meaning of the terms of the policy was erroneously admitted. (1 Am. Ins., 78 ; *Partridge v. Ins. Co.*, 15 Wal,. 579 ; Parsons on Mar. Ins., 88.) The evidence failed to establish any usage recognized by the law as sufficient to control the plain, common meaning of the words of the policy. (*Walls v. Bayley*, 49 N. Y., 464.) The existence of such a custom was a question of fact. (*Marine Nat. Bank v. City Bank*, 59 N. Y., 74 ; *Walls v. Bayley*, 49 id., 464 ; Well's Ques. of Law and Fact, § 72; Wharton's Ev., § 965 ; *Underwood v. F. J. Ins. Co.*, 57 N. Y., 505.)

*Jos. H. Choate*, for respondent. The actual breaking ground in entire readiness for sea, with intent to proceed on a voyage, is the time a " port-risk " ceases and a " voyage risk " begins. (1 Pars. Mar. Ins., 358 ; 1 Arnould Mar. Ins., 443 ; *Bowen v. Hope Ins. Co.*, 20 Pick., 275 ; *Bowen v. Mer. Ins. Co.*, id.; *Cockrane v. Fisher*, 2 Cr. & M., 581; *Pettigrew v. Pringle*, 3 B. & Ad., 514 ; *Thompson v. Gillespy*, 5 El. & B., 209 ; *Un. Ins. Co. v. Tyson*, 3 Hill, 118 ; *Am. Ins. Co. v. Hutton*, 24 Wend., 330.) The phrase " perils of the sea," covers only losses or damage which arise from the extraordinary action of the wind and sea, not those caused by their ordinary action. (1 Pars. Mar. Ins., 544 ; *Magnus v. Buttemer*, 11 C. B., 876.)

FOLGER, J. This is an action upon a contract of insurance upon a ship. An inspection of the contract in the record, and our common knowledge that contracts of insurance are almost invariably made by the use of printed forms, with such blanks as need filling written upon with further words to particularize the contract, lead us to suppose that the parties in this case made use of a common printed form

for a marine policy, designed when framed and printed, for the insurance of a vessel on a voyage from one port to another. But we see that the blanks in which should appear the names of the several ports, which would be the intended *termini*, if a voyage was in contemplation, and it was meant to insure the vessel on that voyage — those blanks are not written upon. We at once conclude that the defendants did not intend to take, and did not take a risk upon the vessel for a voyage from one port to another. So much is very plain. We suppose further, that as they meant to make some contract in the nature of marine insurance, it was in their contemplation to make a contract therefor, differing somewhat from a voyage policy. We find in manuscript upon or in the policy, and being in writing controlling over the printed part, the words : *"Port-risk in the port of New York."* Now the words, "in the port of New York," if they were in the policy, and the words "port-risk" were not, would leave the meaning of the parties in their contract, if it is to be interpreted from the words as they read, somewhat obscure. For we find in the printed provisions of the policy, such as would be deemed risks not unlikely to occur upon the open sea, while they are not impossible of occurrence in the port of New York; such, indeed, as are appropriate to a voyage policy, but such as are not appropriate to a policy on a vessel lying at the wharf, or even at moorings in the bay. While adjudications will help us, with proper testimony, to learn just what are the geographical limits of the port of New York, we are not without hesitation in saying, from the language of the policy alone, just what are the risks which an underwriter would be apt to take upon a vessel in the port of New York, and which by such words may be assumed upon her, whether light or loaded, whether made fast to the wharf, or at anchor, or underway; and which if assumed in one or the other condition, may be continued into the other. So that we are prepared to receive the words "port-risk," as a definition of the risk which the defendants have undertaken in the port of New York. We

are prepared to receive them as a limiting and restrictive definition, narrowing the scope of the printed provisions which we have spoken of, and narrowing also the meaning of the written words, " in the port of New York." Being such, they must be indicative of some risks other or shorter than those incurred by a voyage policy. The word " port" attached to " risk" must indicate a risk either liable to be incurred in a port, and not at sea, or differing in some respect from one at sea.

But we are not, as both counsel and the learned court below concede, informed by any judicial decision that any authoritative interpretation has been given to those words when in conjunction. Separately they could be interpreted ; together, no full and exact sense is conveyed by them to the mind of one who has not a knowledge of the vocabulary of marine insurers and insured. They have a meaning and bearing upon the true interpretation of the contract; and it seems, as we have already said, a restrictive bearing. Unable, from any natural and ordinary sense of the words, to say exactly what that bearing is, we have to admit that they are used by marine underwriters as a technical term — a term of usage, so far as the continuous employment of technical words may be called a usage. I should rather, however, deem that to be a usage, which has taken words, which in common use. singly or together, have a meaning and intelligibility to all eyes and ears, and which has, by putting them in a particular use, as in some trade or handicraft, attached to them a meaning and effect not consonant with their public or general meaning. Several examples of this are given in *Walls* v. *Bailey* (49 N. Y., 464). The phrase, " port-risk," is not in that category. It is not used as simply the two words which make it up, but as a compound word and phrase, and as such it does not convey to the public or in general, a definite sense, if any sense. In short, the compound has become one of the technicalities of a business not free from abstruseness, and which deals to much extent in technical phrases, the meaning of which, as used by the experts in the business,

needs explanation to the unaccustomed.   We see no reason, then, why it was not proper at the trial to take the testimony of men expert in this business to explain to the court the meaning of this technicality.   Then, when the testimony had been received from the skilled witnesses of both parties, it was very clear that the proof on either side did not vary from the following idea of the meaning of the phrase : That "*port-risk*," in a marine insurance policy, meant a risk upon a vessel while lying in port, and before she had taken her departure on another voyage.   As there was no conflict of testimony upon this meaning, there was no question upon it to be left to the jury.   As it was admitted that when the injury happened to the vessel insured she had taken her departure, and had begun her voyage, there was nothing at all to leave to the jury, and it was the duty of the court to dismiss the complaint.

It is seen, from what we have said, that the evidence of experts was not received to prove a usage; nor were the questions addressed to the witnesses of the defendant directed to that end.   One was asked if he was familiar with the usages of the business, but the query was a tender to the real question, "Are you familiar with the phrases used in it?" And the question to which the answer, disclosing the meaning of the phrase, was ultimately given, was: " State the meaning of the phrase among underwriters."   Plainly, the inquiries were to find out the meaning of a technical phrase, and not to establish a usage.   We, therefore, have not to deal with the legal questions concerned in an attempt to establish a usage, or to determine the rights of parties claimed to be dependent upon the existence of one.

The exclusion of the testimony of the witness Letson is alleged as error.   It was needful, for his testimony to be either profitable or proper, that he should be shown to have the skill and knowledge of an expert in the marine insurance business.   He did, indeed, give the statement that he was more or less familiar with getting policies from underwriters and attending to marine matters.   This was some

what indefinite, for it did not declare whether the more or the less, had the majority. He did, however, answer positively that he knew of the term " port-risk in the port of New York." When asked what he understood as the meaning of the term, he was checked by an interlocutory cross-examination by the defendant.. It then appeared that he had never seen the words " port-risk " in a policy, and did not declare that he had ever known it to be used in the business of insurance, save in a general way. He had never known it used in a policy or an application for one. One may come to an accurate knowledge of the meaning of the technical terms of a science or a trade, by the study of them, as one would study a strange language. This witness did not pretend to that. One most generally comes to an accurate knowledge of the technical terms of a business by a practical and interested use of them, by seeing and knowing the terms when applied to actual transactions, so that the unknown or obscure meaning is demonstrated by the existing fact into which it has been precisely translated. This witness had never seen or known this. He was only acquainted with the terms. He showed no such particular, special or practical knowledge, from acquaintance with them in actual use in the business affairs of men, as qualified him to stand as an expert skilled enough to teach others. An expert is, from the derivation of the word, one instructed by experience, and to become one requires a course of previous habit and practice, or of study, so as to be familiar with the subject. (*Carter* v. *Boehm*, 1 Smith's Lead. Cas., 286, note.) And whether one offered as an expert is qualified to speak as such, is a fact preliminary to his testifying as such, and is to be determined by the court at the trial. (*Jones* v. *Tucker*, 41 N. H., 546.) And it is said that the decision of the trial court is not reviewable. (Id.) We need not take that ground here. The witness, to say the least, did not so clearly show himself qualified to speak, as that it was error to close his mouth, upon the claim made for him to open it as an expert.

We do not look upon the evidence of the experts, which was put into the case, as taken to prove a usage of a trade, but to explain words which had been given a technical meaning, in a business in which they were used, as conveying a sense which the public uninstructed, could not derive from them. Hence the points of the appellant taken upon the contrary idea are not tenable.

The judgment appealed from should be affirmed.

All concur.

Judgment affirmed.