## E. H. Connable, Appellant, v. C. F. Clark, Respondent.

### Kansas City Court of Appeals, May 5, 1887.

1. Evidence—Meaning of Words—Usage—Rule Concerning.—The meaning of words may be controlled and varied by usage, even when they are words of number, length, or space, usually the most definite in language, as, for instance, "that a general custom prevailed in the lumber trade of estimating two packs of shingles, of certain dimensions, as a thousand shingles, without reference to the number of pieces in the pack."

2. ———— ———— Distinction Between Words Having a General Meaning Varied by Custom, and those Having a Technical Use.—There is a distinction between the case of words which have "a meaning and intelligibility to all eyes and ears," and which a usage has, by putting them "in a particular use, as in some trade or handicraft, attached to them a meaning and effect not consonant with their general meaning ;" and the case of words which have no full and exact meaning to the public, or in general, and which have such meaning only as a technical term of some business. In *the former case*, the *peculiar* meaning of the words depends upon the *establishment of the usage ;* in the *latter case* it is not so, but it is proper to explain the meaning of the words, as used by *experts*

*in the business,* as bearing upon the *true interpretation of the contract,* and this can be done by the testimony of those expert in the business. *Gaunt, Maupin & Co. v. Price & Co.,* 21 Mo. App. 542.

3. ———— ———— PROVING THE MEANING OF A TECHNICAL TERM—RULE GOVERNING.—In proving the meaning of a technical term, it is not proper to *confine* the evidence to any *particular locality,* the question being, not the meaning of the term in any particular locality, but the meaning of the term *as used in the business* of which it is a technicality. But if a technical term has, in any particular locality, a special meaning, different from its general meaning, such special meaning must rest and depend upon a *usage in such locality.* In such a case the rules applicable to the proof and effect of a usage apply with full force, and it is necessary to show *knowledge* of the usage on the part of the one sought to be bound thereby. And it is only where the usage is general, uniform, certain, and notorious, that it is binding upon parties to a transaction on the ground that they are *presumed* to have contracted in accordance with it; a *local usage* does not bind one ignorant of it.

APPEAL from the Audrain Circuit Court, HON. ELIJAH ROBINSON, Judge.

*Reversed and remanded.*

Statement of case by the court.

This was an action for the recovery of damages on account of the breach of a verbal warranty in the sale of a jack, by the defendant, to the plaintiff. The sale was made in Audrain county, where the defendant lived and was engaged in business. The plaintiff lived in Clarke county, distant from Audrain county. The warranty alleged in the petition was, "that the jack was a good breeder, a good coverer, and a good foal getter." The defendant admitted that he warranted the jack to be a "good breeder." The principal question in the case was as to the true interpretation, and the real meaning, of the words, "good breeder," as used in the warranty made by the defendant. The defendant introduced evidence tending to show that those words, applied to a jack, meant, among those who were accustomed to dealing in, and handling them *in Au-*

*drain county*, that a jack gets good colts. The plaintiff, in rebuttal, offered to testify to the following :

"That he had been handling jacks and stallions for three or four years, in Clarke county, Missouri, his home, and during that time had associated with a number of men in the same business, and never, until Clark made the claim to him in the conversation in the court house, at the last June term of court, heard that the words, 'good breeder,' as applied to a jack, meant only that the animal gets good colts ; that, as he had always heard the expression used, it goes to all the qualities of an animal kept for breeding purposes."

To this testimony the defendant objected, on the grounds that it was immaterial what the term might mean in Clarke county, one hundred miles from the place where the trade was made, but that evidence as to the meaning of the term should be confined to its meaning in the locality where the sale was made. And the court sustained the objection. To which ruling of the court the plaintiff excepted, and at the time saved his exceptions. The court gave for the defendant, among other instructions, the following :

"4. The court instructs the jury that, if they believe from the evidence that the term, 'good breeder,' as used among persons in the locality where the trade was made, who have peculiar knowledge and information in the business of raising, buying, selling, and standing jacks, means, simply, that the jack's colts are of a good quality, and that the term does not mean, as used among such persons, that the jack is a good coverer, or a sure foal getter ; and if the jury believes further that the defendant warranted the jack in question to be a 'good breeder' only, then it is immaterial whether the jack was a quick or slow coverer, or whether he was a sure foal getter, either before or after the sale, and the verdict must be for the defendant."

The court, of its own motion, gave the following instruction :

"2. The court instructs the jury that, if a term, phrase, or word, has been shown, by testimony in the case, to have acquired, by common usage in the locality where a trade is made, a special significance or meaning, then the parties are to be presumed to have had in mind such special meaning at the time of said trade, but it is for the jury to determine, from the testimony in the case, whether any word, term, or phrase, used by the parties in making the trade, had acquired any such special meaning, and if so, what such special meaning was."

GEO. ROBERTSON, for the appellant.

I. The words, "good breeder," are not a subject of expert testimony, because they have a well defined and generally understood meaning in the English language. See Webster's Dictionary.

II. If testimony were admissible to show the *local*, peculiar meaning of the words, as applied to jacks, or other male animals kept for breeding, such questions should have been put to the witness as would show, first, that *they had a local, peculiar meaning*, and, second, what that local, *peculiar meaning* is, at the time and place of the sale, as applied to such an animal, and that there was a *custom or usage* among dealers in such animals, in relation to the meaning of these words. "It should be remembered that, when evidence in support of a trade usage seeks to alter the natural meaning and construction of words, it must, in every case, be clear and consistent." Benj. on Sales, 1 Amer. Notes, by Chas. L. Corbin, 224. "A usage of trade cannot be proven by the understanding, or opinion, of witnesses as to the law, or what should be the rule, but the witness should testify as to the existence of the usage." Abbott's Trial Evid. [1 Ed.] 297; *Allen v. Bank*, 22 Wend. 215; 15 Wend. 482.

III. The testimony of the several witnesses, Potts, Dr. Berry, White, Wifly, Hitt, Shock, Harrison, Shell,

and Lan Morris is not sufficient to show that it was a general and notorious usage that these words "good breeder" had acquired a *local and peculiar meaning*, different from their ordinary and natural meaning.

IV.   To permit usage to govern and modify the law in relation to dealings of parties, it must be uniform, certain and sufficiently notorious to warrant the legal presumption that the parties contracted with reference to it.   *Citizen's Bank v. Graflin*, 1 A. R. 66; *Willis v. Bailey*, 10 A. R. 407; *Southwest, etc., Co., v. Stanard*, 44 Mo. 71; *Clamorgan v. Guise*, 1 Mo. 141; *Martin v. Hall*, 26 Mo. 386; *Kimball v. Browner*, 47 Mo. 398; *Ober v. Carson*, 26 Mo. 209; *Walsh v. Miss. Trans. Co.*, 52 Mo. 434.   Or the evidence must show that the parties did have *actual* knowledge of the usage.   Authorities *supra*.   Mere *opinions of individuals* will not *establish* a custom or usage.   *Marine National Bank v. National Bank*, 17 Am. Rep. 305.

V.  : The evidence admitted as to the mere opinions of witnesses, and as to other matters entirely irrelevant to the matters in issue here, was error.   Such testimony is only calculated to mislead the jury.   1 Greenl. Evid., sect. 52; 1 Whart. Evid. [2 Ed.] sect. 29.

VI.   The court erred in *refusing* to let the testimony of plaintiff, Connable, go to the jury, to the effect that he never heard that the words "good breeder," as applied to a jack, mean only that the jack got good colts, and knew nothing of the peculiar meaning, as applied to them by defendant.   The testimony showed that plaintiff was *in the business* of handling jacks and stallions, and daily associated with men engaged in that business; talked with other men than defendant at Mexico and vicinity, where the sale was made, on the subject, and had visited Wellsville, about twenty miles from Mexico, and there met men engaged in the same business, and he should have been allowed to testify that he never heard the meaning of the words "good breeder," applied to a jack, before Clark put that inter-

pretation on the words, in June, 1885. Plaintiff should have been allowed to testify upon the grounds (1) That the jury *should have known* whether the parties contracted with reference to the *peculiar meaning* of these words, or their *general meaning.* (2) To enable the jury to ascertain if any such *usage* or *custom* existed. *Martin v. Hall,* 26 Mo. 386; *Walsh v. Miss. Trans. Co.,* 52 Mo. 434; *Wallis v. Bailey,* 10 A. R. 407; *Fisher v. Sargent,* 10 Cush. 250. Not only the *existence of such usage,* but whether *knowledge of it exists* in any particular case is a question of fact for the jury. *Winson v. Dilloway,* 4 Metc. [Mass.] 221; 10 Cush. *supra; Wallis v. Bailey, supra;* 1 Whart. on Evid. [2 Ed.] sect. 962; Browne's Leg. Max. 691. And especially should this testimony have been admitted by the court, when defendant's answers on the same subject were confined to no locality and time.

VII. The court erred in *giving* defendant's instruction, telling the jury they could not find on the second count in the petition. There was abundance of testimony on which to find consequential damages. 1 Suth. on Dam. 108; also sect. 4, subject, "Consequential Damages"; 2 Benj. on Sales, sect. 1307, 1336, 1358; *Walls v. Gates,* 4 Mo. App. 1; *Shouse v. Neiswaanger,* 18 Mo. App. 236; *Wolcott v. Mount,* 38 N. J. Law, 496. The second count covered the whole case, as well as damages. *Van Wyck v. Allen,* 6 Daly [N. Y.] 376.

VIII. The court erred, also, in *refusing* plaintiff's instruction on the subject of *warranty.* It was a fair exposition of the law for the jury, under the evidence. And it was error for the court to receive the *general* verdict of the jury without the *special* verdict. *Fennewick v. Logan,* 1 Mo. 401; *Caldwell v. Stephens,* 57 Mo. 589. So there was error in *giving* defendant's instruction as to warranty, as there was *no evidence* in the case to warrant it. So there was error in giving defendant's instruction, which *assumed* a fact, instead of submitting it to the jury.

IX.   Instruction number two, *given by the court* on its own motion, is erroneous, for the reason that it *assumes* that the usage referred to was so *notorious, uniform, certain, and general,* that the plaintiff was presumed to have knowledge of it, and *precludes* the idea that the plaintiff, before being bound by it, must have *actual knowledge* of the usage, or that it must be so *notorious,* etc., that he is *presumed* to know it.   See authorities cited, *supra,* under point second.

X.   The *verdict* is against the weight of the evidence in the case.   Defendant says in his testimony : "I never warranted the jack to be a good foal getter and plaintiff never asked me to.   I am sure I never did, nor never said I did."   In his letter to plaintiff of May 23, 1885, defendant says :   "I told you what the jack had done, and that he had proven himself to be a *good foal getter* and a good breeder, *which I guarantee.*"

XI.   The verdict of the jury on the *first* count did not cure the error committed by the court in *withdrawing the second count.*   The second count included the damages claimed in the first count, and the jury, seeing that, *under the instructions,* they could find nothing on the second count, had a right to infer that they could find nothing on the first.   The instruction, asked by defendant and given by the court, *withdrawing the second count,* was likely to, and doubtless did, *confuse and mislead the jury.*

MACFARLANE & TRIMBLE, for the respondent.

I.   Testimony of witnesses who have the *knowledge* is admissible to define or interpret the *peculiar* meaning of a word when used in connection with the subject matter of the transaction under inquiry.   1 Greenl. Evid. (Redfield's Ed.) sect. 280, and notes ; *Mead v. Ins. Co.,* 7 N. Y. 537 ; Lawson's Expert and Opinion Evid. 49.

II.   The plaintiff objected to the testimony explaining the term, "good breeder" on the ground, that it

consisted "only of ordinary English words," and hence was not proper matter for expert testimony. *No objection* was made at the time of interrogating any of the witnesses that they were not *qualified* to testify. Their qualification was taken for granted, if not proved. After the evidence was all in and the witnesses gone the defendant asked the court to withdraw the testimony of such witnesses from the jury, for the alleged reason "that their answers did not show that they were qualified to answer." This court will only consider *the objection which was made at the time* the evidence was offered, viz: "That 'good breeder' could not be defined by the witnesses because they are ordinary *English words*." If other objections had been made at the time, the grounds thereof (if existing) could have been removed. *Margrave v. Ausmuss*, 51 Mo. 561 and 567 ; *Buckley v. Knapp*, 48 Mo. 152 and 164 ; *Clark v. Conway*, 23 Mo. 438.

III. It was not *necessary*, as claimed now by plaintiff in second point of brief, to show that the term, "good breeder," had a *peculiar* meaning before showing what that peculiar meaning was. It would not be necessary to prove that an object had some color before proving that it was black. *Proving the latter necessarily proves the former.* Moreover, the evidence was *not objected to* on that ground when offered. The point is raised now for the *first time.*

IV. Objections urged to the testimony of witnesses, *for the first time in this court,* will not be considered by the court. *Grim v. Gamache*, 25 Mo. 41. And where no proper objection was made *at the time,* the testimony, even if inadmissible, *when properly objected to,* the action of the trial court in admitting it would not be reversible error. *Carpenter v. Rynders*, 52 Mo. 278 ; *Tuggle v. Railroad*, 62 Mo. 425.

V. The trial court did not commit error in sustaining a demurrer to *the evidence on the second count,* because : (1) There was *no evidence* as to when plain-

tiff might have supplied himself with another jack, by exercise of diligence, after ascertaining that this one would not cover, *consequently no way* of *ascertaining* how much patronage he *necessarily* lost. (2) Plaintiff's terms were ten dollars to insure a colt and nothing if no colt was foaled, and there was no evidence as to how many colts would probably have been foaled from the service of a jack during the time necessary to replace this one. (3) There was no evidence to show what expense, if any, was incident to the standing of a jack so that the profits might be estimated. The jury would have been left to mere guess or conjecture in estimating the consequential damages asked in second count; hence it was proper to instruct them that plaintiff was not entitled to recover on that count. 1 Sutherland on Dam., 108, *et seq.*, and authorities cited. Both counts were based upon the same warranty and the same breach. Hence a verdict for defendant on the first necessarily precluded plaintiff's recovery on the second. The action of the court, if error at all, was harmless. Rev. Stat., sect. 3569 ; *Patterson v. McClanahan*, 13 Mo. 507.

VI. The court did *not* err in refusing plaintiff's instruction as to warranty, which was properly *modified* by the court. Neither the pleadings nor the evidence warranted the instruction *as asked. Nor was it error* for the court to receive the *general* verdict without requiring the jury to return answers to the *special* questions put them by the instructions given at plaintiff's request. (1) Because *no objection* was made to receiving the general verdict *at the time.* (2) Because the questions call for answers on matters not in issue ; or on matters that are immaterial or irrelevant. Hence the error, if any, was *harmless.*

VII. Instruction numbered three, for defendant, properly told the jury that if the jack was of the kind and quality warranted, at the time and place of the sale, that it was *immaterial* what his condition may have been *afterward.* There was *no evidence* or claim that

defendant had warranted or insured the jack for the future.

VIII. It was not *error* for the court to *assume*, in instruction number four, for defendant, that the jack's colts were of a good quality. All the evidence showed that he got colts and that they were good ones. This fact was proved *conclusively* and *was uncontradicted.* *Such facts may be properly assumed ;* at least, such assumption does not constitute *reversible error.* *Caldwell v. Stephens*, 57 Mo. 589 ; *Mauerman v. Siemerts,* 71 Mo. 105 ; *Field v. Railroad,* 80 Mo. 206.

IX. If the instruction number two, given by the court on its own motion, be error, it is *error against the respondent*, and not against the appellant. The doctrine of *usages and customs* has no place in this case at all, and if the instruction meant what appellant claims it meant, then the court erred in appellant's interest, for defendant on the trial only undertook to show the *meaning of a term,* and did not attempt to *establish a custom*, nor was he called upon to do so. The authorities referred to do not apply.

X. The *verdict* was clearly in accord with the *weight of the evidence*, and was *manifestly right.* But if it were otherwise this court would not reverse on that ground. The *verdict* has settled that question.

HALL, J.—The plaintiff objected to the introduction of any evidence explaining the meaning of the term, "good breeder," on the sole ground that the words were only ordinary English words, and not a proper subject for expert testimony. The rule, with certain limitations, is, "that the meaning of words may be controlled and varied by usage ; even when they are words of number, length, or space, usually the most definite in language.'" *Walls v. Bailey*, 49 N. Y. 442. The rule has been applied, in this state, to a case in which evidence was introduced to show " that a general custom prevailed in the lumber trade of estimating two packs of shingles, of

certain dimensions, as a thousand shingles, without reference to the number of pieces in the pack." *Soutier v. Kellerman*, 18 Mo. 511. The objection to the admission of the evidence was untenable.

Besides, there is a distinction between the case of words which have "a meaning and intelligibility to all eyes and ears," and which a usage has, by putting them "in a particular use, as in some trade or handicraft, attached to them a meaning and effect not consonant with their general meaning," and the case of words which have no full and exact meaning to the public, or in general, and which have such meaning only as a technical term of some business. In the former case the peculiar meaning of the words depends upon the establishment of the usage; in the latter case it is not so, but it is proper to explain the meaning of the words, as used by experts in the business, as bearing upon the true interpretation of the contract, and this can be done by the testimony of those expert in the business. *Nelson. v. Ins. Co.*, 71 N. Y. 458; *Gaunl, Maupin & Co. v. Price & Co.*, 21 Mo. App. 542.

The words, "good breeder," as applied to a jack, if used separately, could be easily interpreted; but, used together, they convey no full and exact sense to the mind of one not familiar with the vocabulary of those engaged in the business of raising, handling and dealing in jacks. The words clearly have some meaning, but their meaning is uncertain and indefinite. Do the words mean that a jack is fit and suitable for breeding purposes, or do they mean that the jack produces good colts? I think that the court below properly treated the words as constituting a technical term.

In this state the words, "prime barley," have been held to be a technical term of the business of buying and selling barley (*Whitmore & Pegram v. Coats*, 14 Mo. 15); the terms, "excavation," "indurated earth," and "hard pan," have been held to be technical terms of the business of railroad grading (*Blair v. Corby*, 37

Mo. 313); the term, "merchantable measurement," has been held to be a technicality of the business of buying and selling lumber (*Gaunt, Maupin & Co. v. Price & Co., supra*); the term, "spitting of blood," has been held to be one of the technical terms of the business of life insurance. *Singleton v. Ins. Co.*, 66 Mo. 63. In New York the phrase, "port risk," has been held to be a technical term of the business of marine insurance. *Nelson v. Ins. Co., supra.*

It is apparent, however, that, if a technical term has, in any particular locality, a special meaning, different from its general meaning, such special meaning must rest and depend upon a usage in such locality. In such a case the rules applicable to the proof and effect of a usage apply with full force.

In proving the meaning of a technical term, therefore, it is not proper to confine the evidence to any particular locality, the question being, not the meaning of the term in any particular locality, but the meaning of the term as used in the business of which it is a technicality.

Hence, it was proper in this case to prove, by those expert in the business of raising, handling and dealing in jacks, the meaning of the phrase, "good breeder," as used in said business in reference to a jack; but the evidence should not have been confined to the locality of the sale. If the parties use the phrase in a peculiar sense, different from its general meaning, either party might have shown this by any competent evidence, including evidence of a usage in the locality of the sale, giving such peculiar meaning to the phrase, and the knowledge, by the parties, of such usage. Proof of such usage did not alone suffice to conclusively show that the parties used the phrase in the sense affixed to it by the usage. It was necessary to show knowledge of the usage on the part of the one sought to be bound thereby. This might have been done by presumptive, as well as by direct, evidence, that is, by the extent and duration of the

usage, and other evidence tending to connect said party with such knowledge. It is only where the usage is general, uniform, certain, and notorious, that it is binding upon parties to a transaction on the ground that they are presumed to have contracted in accordance with it.

A local usage does not bind one ignorant of it. This principle is fully sustained by the following cases : *Martin v. Hall*, 26 Mo. 386 ; *Kimball v. Brawner*, 47 Mo. 398 ; *Cotton Press Co. v. Stanard*, 44 Mo. 71 ; *Walsh v. Miss. Trans. Co.*, 52 Mo. 434 ; *Walls v. Bailey*, 49 N. Y. 442 ; s. c., 10 Am. Rep. 407.

The court erred in refusing to permit the plaintiff to testify in rebuttal, as he offered to testify. Such testimony was competent as tending to show the general meaning of the technical term, and also the plaintiff's ignorance of the peculiar meaning affixed to the term by the local usage in Audrain county. The instructions, given by the court on its own motion and for the plaintiff, and which have been set out in the statement of facts, were also erroneous, because they bound the plaintiff by the usage, on proof of it, without more, whether he had knowledge of it or not. The question, as to the plaintiff's knowledge of such usage, should have been submitted to the jury.

Judgment reversed and cause remanded. Ellison, J., concurs ; Philips, P. J., concurs in the result.