## Case No. 14,024.

### TIDMARSH v. WASHINGTON FIRE & MARINE INS. CO.

[4 Mason, 439.] 1

Circuit Court, D. Massachusetts.   Oct Term, 1827.

MARINE INSURANCE — BURDEN OF PROOF — SEAWORTHINESS—EQUIPMENT—REPRESENTATIONS.

1. In a writ on a policy of insurance, where the underwriters set up the defence, of misrepresentation, negligent navigation, deviation, and unseaworthiness, the onus probandi of the three former rests on the underwriters; but seaworthiness is to be proved by the assured, for it is a condition precedent.

[Cited in Hazard v. New England Marine Ins. Co., 8 Pet. (33 U. S.) 580; Lunt v. Boston Marine Ins. Co., 6 Fed. 568; Premuda v. Goepel, 23 Fed. 413.]

[Cited in American Ins. Co. v. Bryan, 26 Wend. 582; Slocovich v. Orient Mut. Ins. Co., 108 N. Y. 66, 14 N. E. 802.]

2. What is the proper rule as to seaworthiness. In what cases it is to be measured by the standard in the ports of the country to which the vessel belongs.

[Quoted in The Titania, 19 Fed. 106.]

[Cited in Cobb v. New England Mut. Marine Ins. Co., 6 Gray, 200.]

3. What equipments are generally necessary to constitute seaworthiness.

4. If a party makes a representation on the information of others, and states it, not as known to him, but merely as information, the representation is not falsified, so as to avoid the insurance, if the fact is not so, but the party has given his information truly.

[Cited in Clark v. Manufacturers' Ins. Co., 8 How. (49 U. S.) 249.]

[5. Cited in Bailey v. Hope Ins. Co., 56 Me. 479, to the point that contracts of marine insurance, wherever made, are supposed to be made with reference to the usages of the place to which the ship belongs.]

Assumpsit [by James H. Tidmarsh] on a policy of insurance, dated the 13th of October, 1826, of "$1000 on property on board schooner Emily, at and from Bahia to Halifax," by P. R. Dalton for James H. Tidmarsh. The declaration averred a total loss by perils of the sea and shipwreck on the 23d of November, 1826. Plea, the general issue. At the trial there was no question as to the proprietary interest of the plaintiff. nor as to the totality of the loss, the vessel having been shipwrecked, near Sambro lighthouse, in going into Halifax on the homeward voyage, nor as to the preliminary proofs of loss having been duly made. The defence turned principally upon questions of fact, which were very much discussed upon the testimony. The following points were made by Webster and Curtis for the defendant, and were replied to by Welsh for the plaintiff: 1. That the vessel was not seaworthy, at the time of her departure from Bahia, by reason of the badness and insufficiency of her sails and windlass. 2. That there was a misrepresentation in a letter, written by the plaintiff in January, 1826,

1 [Reported by William P. Mason. Esq.]

which was shown to the underwriters, when the policy was underwritten, and contained a description of the vessel, asserting, among other things, "that all her outfit is new, except three chain cables and three second hand anchors;" that she "is said to sail uncommonly fast," and "is particularly adapted to the Brazil coast." All of which statements were alleged to be untrue. 3. That the loss was occasioned by negligent navigation on the part of the master, first, in sailing from Prospect Bay, in Nova Scotia (into which place he had put for safety), without having two anchors on board, which might have been procured from Halifax, and, secondly, by improper conduct in the course and sailing of the ship, after he left that place, on the voyage for Halifax. 4. That there was a deviation by unnecessary delay, in Chester Bay (Nova Scotia), into which the vessel put, from unfavourable winds, after she left Prospect Bay.

STORY, Circuit Justice, in summing up the facts to the jury, said: There being a great conflict of opinion on the testimony upon some of the questions made at the bar, it may be necessary to consider upon whom the burthen of proof lies, for that may naturally influence your verdict. If, upon the whole evidence, the case hangs in great doubt upon any point, then the party, whose duty it is to satisfy your minds beyond a reasonable doubt on that point, having failed to establish it, must, to that extent, surrender his right to a verdict. Now, upon the three points of misrepresentation, negligent navigation, and deviation, my opinion is, that the burthen of proof rests on the defendant. Each of them constitutes a substantial ground of defence, in respect to which the plaintiff is not to prove the negative, but the defendant is required to establish the affirmative. So far indeed as the plaintiff's own proofs let in or assist such a defence, they are fairly before the jury to weigh as far as they may; but beyond these the defendant must satisfy your remaining doubts, or the defence miscarries. In respect, however, to the point of seaworthiness a very different principle prevails. There the burthen of proof rests on the plaintiff himself, for the existence of seaworthiness at the commencement of the voyage is a condition precedent, implied by the law, to the attaching of the policy. Unless therefore the vessel be seaworthy at the commencement of the voyage, the underwriter is never bound, for the contract has never attached itself to the risk.

Much argument has been employed at the bar upon the question of the nature and extent of seaworthiness. It has been properly remarked, that the standard of seaworthiness has been gradually raised within the last thirty years, from a more perfect knowledge of ship-building, a more enlarged experience of maritime risks, and an increased skill in navigation. In many ports, sails and other equipments would now be deemed essential, which at an earlier period were not customary on the same voyages. There is also, as the testimony abundantly shows, a considerable diversity of opinion, among nautical and commercial men, as to what equipments are, or are not, necessary. Many prudent and cautious owners supply their vessels with spare sails and a proportionate quantity of spare rigging; others do not do so, from a desire to economise, or from a different estimate of the chances of injury or loss during the same voyage. Of course, different men may well therefore come to different conclusions from the same premises, on a point like this, from their own habits of life, and the general custom of the place to which they belong. But I think I may say, that it would not be a just or safe rule in all cases to take that standard of seaworthiness, exclusively, which prevails in the port or country, where the insurance is made. In the present case the insurance is made in Boston, upon a British vessel belonging to the port of Halifax in Nova Scotia. If the Boston standard of seaworthiness should essentially differ from that in Halifax, in respect to equipments for a South American voyage of this sort, it would be pressing the argument very far to assert, that the vessel must rise to the Boston standard before the policy could attach. It seems to me, that where a policy is underwritten upon a foreign vessel belonging to a foreign country, the underwriter must be taken to have knowledge of the common usages of trade in such country, as to equipments of vessels of that class, for the voyage on which she is destined. He must be presumed to underwrite upon the ground, that the vessel shall be seaworthy in her equipments, according to the general custom of the port, or at least of the country, to which she belongs. It would be strange, that an insurance upon a Dutch, French, or Russian ship, should be void, because she wanted sails, which, however common in our navigation, never constituted a part of the marine equipments of those countries. We might as well require, that their sails and rigging should be of the same form, size, and dimensions, or manufactured of precisely the same materials as ours. In short, the true point of view, in which the present case is to be examined, is this, was the Emily equipped for the voyage in such a manner, as vessels of her class are usually equipped in the province of Nova Scotia, and port of Halifax, for like voyages, so as to be there deemed fully seaworthy for the voyage, and sufficient for all the usual risks? If so, the plaintiff, on this point, is entitled to a verdict. Of course, the question of seaworthiness must be, in some respects, the same in all countries. Cables and anchors, and proper rigging and sails, to meet the ordinary exigencies of the voyage, must be, in every country, put on board for common safety.

Upon the point of misrepresentation there is one other consideration, which requires attention. Where a letter contains a representation of facts not known to the party, but from the information of others, and so the letter states the facts, or it is a necessary inference from the nature of them, then the representation is not falsified by the mere proof, that the facts are not so, if the party communicating the facts did receive such information, and bonâ fide confided in it. He undertakes there, not for the truth of the facts, but for the truth of his information.

Verdict for the defendant.