JAMES J. COBB & another *vs.* NEW ENGLAND MUTUAL MARINE INSURANCE COMPANY.

SAME *vs.* SAME.

On a policy issued by a mutual insurance company, "for whom it concerns," to one who has no interest in the property insured, the owner of the property, by whose authority the policy was obtained, may maintain an action, subject to any right given to the insurers by the terms of the policy to deduct any amounts due them from the assured.

A policy of insurance upon a vessel described as now building, "lost or not lost," "to take effect as soon as waterborne," takes effect at once, if the vessel is already waterborne.

A policy of insurance on a vessel, "to take effect as soon as waterborne," "at and from" one port, "with liberty to stop at," or "to proceed to" a second port, and thence on a certain voyage, is binding, if she is described in the policy as "building at" the first port, and has in fact been built and launched there in a fit condition to be towed to the second port (which is on the same river as the first port, and to which it is the custom to tow vessels, launched at the first, before fitting them for sea) and there made seaworthy for her further voyage; or if she is not so described in the policy, and has already arrived at the second port.

\n action on a policy of insurance, which provides that only certain funds of the insurance company shall be applicable to the payment of any loss, may be maintained without a previous demand for the application of such funds, and without proving that the company have any such funds.

f provision, in a policy of insurance on a ship, that any dispute which may arise as to any loss claimed by the assured shall be submitted to arbitrators to be chosen by the parties, and that no holder of a policy shall be entitled to maintain any action thereon against the company until he shall have offered to submit his claim to such arbitration, cannot be set up in defence to an action on the policy, after the insurers, though refusing to accept an abandonment, have taken possession of and repaired the ship.

ACTIONS OF CONTRACT on two policies of insurance made by a mutual marine insurance company established at Boston by *St.* 1839, *c.* 129. By the first policy, which was dated November 15th 1852, the defendants caused the plaintiffs, "for whom it concerns, payable to" the plaintiffs, "to be insured, lost or not lost, ten thousand dollars on the Barque Esperanza, building at Perry, to take effect as soon as waterborne, at and from Perry, with liberty to proceed to Calais and to stop at Eastport, and at and thence to a southern port in the United States not south of New York." By the other policy, which was dated January 1st 1853, the defendants caused the plaintiffs, "for whom it concerns, payable to" the plaintiffs, "to be insured, lost or not lost, four thousand dollars on the Barque Esperanza, at and from Perry (with liberty to proceed to Calais and Eastport) to a port in the United States not south of New York."

On the face of each policy was the following printed clause: "And it is further agreed, that the parties effecting insurance with this company shall not be liable for any loss sustained by said company, beyond the amount of their premiums; and the absolute and contingent funds of the company, pursuant to the by-laws thereof, shall alone be bound for the payment of any

loss; and in case of loss, the same shall be adjusted and settled according to the 29th section of the said by-laws; and said by-laws are hereby declared to be a part of this contract of insurance; and these presents shall themselves be a sufficient bar against any suit commenced against the company to the true intent and meaning of said 29th section of the by-laws."

Said twenty-ninth section was in these words: " In case any difference or dispute shall arise in relation to any loss sustained, or alleged to be sustained, by the assured under any policy issued by this company, the same shall be referred to and determined by referees mutually to be chosen by the assured and the directors of said company, and if such referees cannot be mutually agreed upon, each party shall choose two referees, and the four shall choose a further number, not exceeding three, provided the first chosen cannot agree; and no holder of any policy shall be entitled to maintain any action thereon against said company until he shall have first offered to submit his claim to said reference."

The only other provision of the by-laws necessary to be stated is the following, from the twenty-fourth by-law: " The president shall, at the expiration of each year, cause a balance to be struck of the affairs of the company, in which he shall charge each person who has been insured with a proportionate share of the losses and expenses of the said company, according to the amount of the premium paid or secured to be paid by him on or for risks which have then terminated; but in no case shall such share exceed the amount of such premium; each member shall be credited with the amount of said premium, and also with an equal share of the profits of said company, in proportion to said premium."

At the trial before *Thomas*, J., it appeared that the plaintiffs had no interest in the barque, but were authorized to insure for the owners, and that these actions were brought for their benefit.

There was also evidence of the following facts: The barque was built at Perry, and launched (waterborne) there on the 14th of November 1852, and three or four days afterwards towed three miles down the St. Croix River to Eastport, where some

trifling things were done to the hull, and she was painted, rigged and fitted for sea. It is usual to take vessels from Perry to Eastport, to rig them and fit them for sea. The barque sailed from Eastport on the 11th of January 1853, with a competent master, mate and crew, and a cargo of laths, for New York, and was stranded on the 14th of January on the New Jersey shore.

On the 21st of January the plaintiffs offered and claimed a right to abandon for a total loss. The defendants refused to accept the abandonment; but took the barque to New York, repaired her, and on the 1st of April gave written notice to the owners of the barque that she was repaired, and that they thereby delivered her to them ; to which the owners replied, reaffirming the abandonment and declining to have any thing to do with the vessel. The vessel was afterwards sold under a decree in admiralty to satisfy the liens of the workmen; and the surplus, after discharging the liens, paid into the registry of the court of admiralty.

The defendants introduced evidence tending to show that the vessel was not seaworthy, by reason of insufficient and improper construction ; and that at the time of the offer to return she had been suitably repaired. The plaintiffs introduced evidence tending to show that the vessel was properly constructed ; and was seaworthy at Eastport for a cargo of laths to New York ; and that the repairs made by the defendants did not make good the damage done by the stranding.

The defendants relied upon the following grounds of defence :

1st. That the plaintiffs, having no interest in the barque, could not, by an insurance in their own names, payable to themselves, become members of the defendant corporation ; because the defendants were not by law competent to insure persons having no interest, as they would not have a right, under such an insurance, to deduct from the loss the amount which might be due from the owner of the property on other transactions.

2d. That the policies never attached ; (1.) as to the first pol·icy, because it was, by its terms, to attach upon a subsequent event, namely, upon the barque's being waterborne, which in fact took place on the day before the execution of the policy ;

and (2.) as to both policies, because the voyage underwritten was a " voyage at and from Perry," and the barque never sailed from Perry as a finished vessel; (3.) because the vessel was never seaworthy at Perry. And they asked the judge to rule, that the plaintiffs were not entitled to recover unless the vessel was seaworthy at Perry, and sailed therefrom, as a finished vessel, to a port in the United States not south of New York.

3d. That the plaintiffs had not made a demand, before suit, upon the defendants, to apply or deliver to the plaintiffs the funds which, by the contract, were applicable to the payment of the plaintiff's supposed loss ; nor proved that there were any such funds in the possession or control of the defendants.

4th. That the provisions in the policy and twenty-ninth by-law, for adjusting the loss and submitting to arbitration any dispute in relation thereto, affected the right, and not the remedy, and were valid and binding on the assured ; and that the plaintiffs, as a condition precedent to any right of action, must show an offer on their part to adjust their claims in the mode thus prescribed.

But the judge declined to sustain any of the positions taken by the defendants ; and instructed the jury "that it was not necessary for the plaintiffs to show that, when the barque left Perry, she was seaworthy for the voyage to New York; that the policy in the first case was to attach and take effect when the vessel was waterborne; and that the parties must, of course, have understood that, after she was launched, further labor and materials would be necessary to fit her for her voyage to New York ; that, under the first policy, if the barque was in a condition to be towed safely to Eastport, it was a compliance with the implied condition of seaworthiness, so far as the proceeding from Perry to Eastport was concerned ; and if, upon her arrival at Eastport, she was equipped and made seaworthy for the voyage to New York, the duty of the plaintiffs in this regard would be discharged ; that it was sufficient for the plaintiffs to show that, when the barque left Perry, she was in a fit condition to proceed to Eastport, and, when she left Eastport, in a fit condition to proceed on her voyage to New York ; and the plaintiffs

might recover on both policies." The jury returned a verdict for the plaintiffs for the full amount of both policies, and the judge reported the cases to the full court.

*C. B. Goodrich,* for the defendants, cited in support of the second ground of defence, *Hull* v. *Cooper,* 14 East, 479 ; 1 Phil. Ins. § 931 ; *Mellish* v. *Allnutt,* 2 M. & S. 106 ; *Spitta* v. *Woodman,* 2 Taunt. 416 ; *Constable* v. *Noble,* 2 Taunt. 403 ; *Payne* v. *Hutchinson,* 2 Taunt. 405, *note ; Park* v. *Hammond,* 6 Taunt. 495 ; *Martin* v. *Fishing Ins. Co.* 20 Pick. 389 ; *Paddock* v. *Franklin Ins. Co.* 11 Pick. 232 ; and in support of the fourth ground, Rev. Sts. *c.* 37, § 31 ; *Cray* v. *Hartford Fire Ins. Co.* 1 Blatchf. C. C. 280 ; *Crisp* v. *Bunbury,* 8 Bing. 394 ; *The Queen* v. *Northwich Savings Bank,* 1 P. & Dav. 477, and 9 Ad. & El. 729 ; *The King* v. *Mildenhall Savings Bank,* 2 Nev. & P. 278, and 6 Ad. & El. 952 ; *Eastern Union Railway* v. *Eastern Counties Railway,* 2 El. & Bl. 530 ; *Scott* v. *Avery,* 8 Exch. 487 ; *Milner* v. *Field,* 5 Exch. 829 ; *Stracy* v. *Bank of England,* 6 Bing. 754 ; *Boynton* v. *Middlesex Mutual Fire Ins. Co.* 4 Met. 212 ; *Chambers* v. *Jenness,* 4 Barr, 39.

· *A. Hayden,* of Maine, ( *W. Dehon* with him,) for the plaintiffs.

The decision was made at March term 1857.

THOMAS, J. Both of these policies cause the plaintiffs to be insured, " for whom it concerns," payable in case of loss to the plaintiffs. The plaintiffs were authorized to insure for the owners of the barque, and the suits were brought for their benefit.

1. The defendants say that, being a mutual company, they were not competent in law to insure persons having no interest in the property insured ; for that without such interest the plaintiffs could not become members of the company.

We have examined the act of incorporation and by-laws of the defendants, and have discovered no such limitation of their power. The ground upon which the matter is put by the learned counsel for the defendants is, that such an insurance would not confer upon the office a right to deduct from the amount of the loss what might be due from the owner of the property from other transactions. It is sufficient for the present case to say that no such exigency is shown to exist.

17 *

But if it did, and the owners of the vessel insured adopted and sanctioned the contract, as they would by bringing their suit upon it, there would seem to be no practical difficulty in making the adjustment, and nothing, in the existence of a provision for it, to impair the validity of the contract.

2. The defendants further say that the policies never attached; that the first policy was, by its terms, to attach upon a subsequent event, to wit, upon the barque's being waterborne; and that, in point of fact, she was waterborne the day before the execution of the policy.

The policy was executed at Boston on the 15th of November. The vessel was waterborne the 14th of November. The policy causes the plaintiffs to be insured, " lost or not lost, ten thousand dollars on the Barque Esperanza, building at Perry, to take effect as soon as waterborne."

It is difficult to see why the policy which caused the barque to be insured, " lost or not lost," did not take effect from the time when she was waterborne. It was a barque in the process of construction. The insured, apparently not knowing the exact time she would be launched, provides for her insurance from and after that time, " as soon as waterborne." Be this as it may, the barque was waterborne when the policy was executed, and as the policy was to take effect as soon as she was waterborne, it took effect at once.

This is so, unless there be greater force in the second reason given by the defendants why neither of the policies attached; which is, that the voyage underwritten was a " voyage at and from Perry," and that the barque never sailed from Perry as a finished vessel. The fact is so; and if this be the true construction of the contract there is an end of the case, unless the subsequent conduct of the defendants was a waiver of the objection.

It appeared in evidence that Perry was on the River St. Croix, three miles above Eastport; and that vessels were usually taken to Eastport to be rigged and equipped for sea.

The policy, then, is upon a barque at Perry in process of construction, to take effect as soon as waterborne, and " at and from

Perry, with liberty to proceed to Calais," (up the river about twenty three miles,) of which liberty she did not avail herself · " and to stop at Eastport, and at and thence to a southern port," &c.

The vessel was launched at Perry; she was thence towed to Eastport and rigged and equipped for sea; and from Eastport she sailed in a seaworthy condition for New York. The court instructed the jury, that it was not necessary for the plaintiffs to show that, when the barque left Perry, she was seaworthy for the voyage to New York; that the first policy was to attach and take effect when the vessel was waterborne; that the parties must have understood that, after she was launched, further labor and materials would be necessary to fit her for her voyage to New York; that if the barque was in a condition to be towed safely to Eastport, it was a compliance with the implied condition of seaworthiness, so far as proceeding to Eastport was concerned; and that if, upon her arrival at Eastport, she was equipped and made seaworthy for the voyage to New York, the duty of the plaintiffs in this regard was discharged. We think the construction given to the contract, in these instructions, was correct.

The defendants rely upon the want of seaworthiness. They say the barque was not seaworthy at Perry; that she never sailed from Perry as a finished vessel. She did not sail from Perry as a finished vessel; nor from the contract, viewed in the light of the surrounding facts, could it have been expected that she should. But she was seaworthy, in the sense that she was fit for the service in which she was for the time engaged. She was in a fit condition at Perry to go to Eastport in the usual way; she was in a fit condition before she left Eastport to go to New York.

The question is, whether the facts show a compliance with the implied warranty of seaworthiness. We think they do; that, though the precise point is not found to have been determined, such is the reasonable result, both as matter of principle and of authority. `

The requisites for seaworthiness, it is obvious to remark,

depend upon the nature of the risk or service to which the vessel is to be put; seaworthiness for lying in port, or for navigating a river or canal, being in degree, if not in kind, a very different thing from seaworthiness for a long voyage on an open sea. 1 Phil. Ins. § 720. *M'Lanahan* v. *Universal Ins. Co.* 1 Pet. 170. *Annen* v. *Woodman,* 3 Taunt. 299. In the recent case of *Small* v. *Gibson,* Mr. Baron Parke (now Lord Wensleydale) says : " It is enough to satisfy the terms of the assumed implied condition, that the vessel is fit for navigation, if at sea or on a river, or on the point of setting sail on either, or that she is in such a state of physical safety in a port, preparing for a voyage, as to enable her to be in reasonable security till she should be repaired and equipped for it ; and in order to constitute a breach of the condition both these alternatives must be negatived." 16 Ad. & El. N. R. 152. " There are," says Mr. Arnould, " in fact, degrees of seaworthiness ; seaworthiness for the voyage is one thing ; and seaworthiness in port, or for an inland navigation, &c., quite another." " What that degree of seaworthiness is, which is requisite to make a policy ' at and from ' attach upon a ship while in port, has nowhere been very accurately laid down. Generally speaking, it may be said that, under such a policy a ship will be sufficiently seaworthy to give an inception to the risk, if she be in such a state, while ' at ' the port, as to be capable of being moved from one part of the harbor to another for the purpose of repair, and of being moved alongside its wharves or quays there in order to take in a cargo." 1 Arnould Ins. 671. See also *Annen* v. *Woodman,* 3 Taunt. 299 ; 3 Kent Com. (6th ed.) 289 ; *Taylor* v. *Lowell,* 3 Mass. 331 ; *Merchants' Ins. Co.* v. *Clapp,* 11 Pick. 56.

It is also familiar law that seaworthiness is to be measured by the standard in the ports of the country to which the vessel belongs, rather than by that in the ports or country where the insurance is made. 3 Kent Com. 288. *Tidmarsh* v. *Washington Fire & Marine Ins. Co.* 4 Mason, 439.

So the contract is presumed to be made with reference to the usages of the place to which the contract has reference ; in this case, that it was usual to take vessels built at Perry to Eastport,

to be rigged and equipped for sea.    1 Phil. Ins. § 141.    *Macy* v. *Whaling Ins. Co.* 9 Met. 354.

The first policy, then, attached, because it was upon a vessel not finished, a vessel in process of construction; and because, when removed from Perry to Eastport, she was in a condition of security for that purpose or service; and when she sailed from Eastport to New York, she was seaworthy for that service.

The same principles apply, perhaps with not the same degree of force, to the second policy.    Though the policy was effected after the barque had left Perry, it was clearly intended to cover the same risk as the first, with the difference only, that the barque was, at the time the second policy was issued, water-borne.    But, within the principles before stated, the barque was not at any time unseaworthy; that is, she was not unfit for the service to which she was put.    The remarks of Mr. Baron Parke in the case of *Dixon* v. *Sadler* are directly applicable.    " If the assurance attaches before the voyage commences, it is enough that the state of the ship be commensurate to the then risk; and if the voyage be such as to require a different complement of men, or state of equipment, in different parts of it, as if it were a voyage down a canal or river, and thence across the open sea, it would be enough if the vessel were, at the commencement of each stage of the navigation, properly manned and equipped for it."    5 M. & W. 414.

We think this is a just statement of the rule applicable to these policies.    It is the rule given to the jury.    The plaintiffs could not recover, unless the vessel, when she left Perry, was in a fit condition to be removed to Eastport; nor unless, when she left Eastport, she was in a fit condition to go to New York.

The defendants say, the terms of the second policy import a finished vessel, and that as such she was to leave Perry.    Such certainly is not the necessary meaning of its words; and when the words are applied to the subject matter, and interpreted by the light of the surrounding facts; when we ascertain that this is a barque upon which, six weeks before, the defendants issued a policy as then in process of construction, to take effect when waterborne; when we go to Perry, and see what and where it

is, and its relation to Eastport, and the usage as to vessels built at the former place as connected with the latter; that is, when we put ourselves in the situation of the parties, and look at the contract from their standpoint, such does not appear to be the necessary or the reasonable interpretation of its language.

Nor do the authorities relied upon by the defendants, to show that the policies did not attach, sustain the position.

*Hull* v. *Cooper*, 14 East, 479, decides, that if a ship be insured at and from a place where she is not in fact at the time, but arrives there after some interval, it is a question for the jury whether the delay which intervened materially varied the risk. Lord Ellenborough said : " When a broker proposes a policy to an underwriter on a ship at and from a certain place, it imports either that the ship is there at the time, or shortly will be there ; for if she is only to be there at a distant period, that might materially increase the risk." This is doubtless good law ; but we fail to perceive its just application to policies, the one of which is, in terms, upon a vessel then building, and the second, if regarded as an insurance upon a voyage only, was upon a voyage the first stage of which was performed when the policy was effected, and where the contract could only import that the vessel had been there before the voyage was commenced.

The defendants refer to the work of Mr. Phillips, which states that " insurance at or from a port can commence only at such port, and such places as are comprehended as part of it, or at a place at which, by usage, goods insured from the place named are loaded." 1 Phil. Ins. § 931. It is difficult to see the bearing of this familiar principle upon the case at bar. This insurance commenced at Perry. The barque had liberty to proceed to Eastport, and she went to Eastport in a condition of security, and as vessels usually proceed from Perry to Eastport, and from Eastport proceeded to New York in a condition found by the jury to be seaworthy.

*Mellish* v. *Allnutt*, 2 M. & S. 106, decided that a policy of insurance on goods and ship at and from Gottenburg to the ship's port of discharge, " beginning the adventure upon the said goods from the loading thereof aboard the said ship," did not cover goods

loaded from an anterior port. If the case at bar had been on policies at and from Eastport, the authority might have been pertinent. But in the case at bar, the policies, in terms, cover the barque at and from Perry, as well as at and from Eastport.

The three cases in the second volume of Taunton's Reports, *Payne* v. *Hutchinson, Constable* v. *Noble,* and *Spitta* v. *Woodman,* are substantially to the same point as *Mellish* v. *Allnutt. Park* v. *Hammond,* 6 Taunt. 495, is to the same effect as the section from the work of Phillips, and is in fact cited by him in support of his position.

In *Paddock* v. *Franklin Ins. Co.* 11 Pick. 227, a policy, " lost or not lost, on cargo on board the Ship Tarquin, now on a whaling voyage in the Pacific Ocean, during her stay and until her return," " beginning the adventure upon the cargo as aforesaid," was held to relate back to the commencement of the voyage, so as to cover any loss which happened at any time anterior to the date of policy. The doctrine stated in that case, as to what is necessary to satisfy the implied warranty of seaworthiness, is exactly that upon which we have proceeded. 11 Pick. 232.

In *Martin* v. *Fishing Ins. Co.* 20 Pick. 389, where a vessel was insured " at and from Calais, Maine, on the 16th day of July at noon, to, at and from all ports and places to which she may proceed in the coasting business, for six months," it was held, that the policy attached, though there was no evidence that the vessel was at or prosecuting her voyage from Calais on the day named; it appearing that the intent was to insure on time.

Whether, after having taken the barque upon the abandonment, and proceeded to repair her, the question of the capacity of the defendants to enter into the contract, and the question whether the policies ever attached, would be still open to the defendants, may well be doubted. But if open, they cannot, we think, prevail.

3. The other grounds of defence have caused less embarrassment.

To show that the defendants have funds applicable to the payment of the loss, and that a demand has been made for

their application before the fact of the loss is legally estab-
lished, before it is made to appear that the plaintiffs will ever
be interested in such funds, cannot be necessary. It will be
time to determine what funds of the company are applicable to
the payment of the loss, when that loss has been ascertained by
the judgment of a competent tribunal.

4. The invalidity of the condition requiring the assured to
submit the question of loss to arbitration seemed to have been
settled, and upon grounds of public policy, which the contract
of the parties could not control. *Kill* v. *Hollister*, 1 Wils. 129.
*Thompson* v. *Charnock*, 8 T. R. 139. *Goldstone* v. *Osborn*, 2 Car.
& P. 550. *Robinson* v. *Georges Ins. Co.* 17 Maine, 131. *Gray* v.
*Wilson*, 4 Watts, 39. 1 Arnould on Ins. 1245. 2 Story on Eq.
§ 1457. The recent cases, however, of *Scott* v. *Avery*, 8 Exch.
487, and 5 H. L. Cas. 811, *Livingston* v. *Ralli*, 5 El. & Bl. 132,
and *Russell* v. *Pellegrini*, 6 El. & Bl. 1020, may possibly lead to
some revision and qualification of the doctrine as heretofore

In the case at bar, the acts of the defendants, in taking posses-
sion of the vessel and proceeding to repair her, with the view
thus to make good the loss, must be deemed a waiver of the
submission to arbitration. The exercise of this right and powei
was inconsistent with any arbitration to determine the extent of
the loss, and precluded the plaintiffs from resorting to it.

*Judgment on the verdict.*