GEORGE SLOCOVICH et al., Respondents, *v.* THE ORIENT MUTUAL INSURANCE COMPANY, Appellant.

The rules determining the subjects upon which experts may testify and prescribing their qualifications are matters of law, but whether a witness offered as an expert, has those qualifications is generally a question of fact to be decided by the trial judge, and his decision will not be held to present an error of law requiring a reversal, unless it is against the evidence or wholly or mainly without support in the facts appearing in the case.

In an action upon a policy of marine insurance where a question was as to the value of the vessel insured, a witness called by defendant as an expert and who showed himself qualified to speak as such, testified that he knew the vessel insured and had been on board of her many times, but not within the last five or six years; also, that he thought he was able from his experience and personal knowledge and the personal examination he had made, to form an opinion as to her value at the time of the loss. He was then asked his opinion as to her value at that time, judging from his personal knowledge and observation and his knowledge of the ordinary results of ordinary wear and tear. It did not appear what the condition of the vessel was in at the time the witness last saw her, but it had been proved that since that time plaintiffs' had expended at least $7,000 in repairing her. *Held*, while it would not have been erroneous to have received the testimony, the exclusion was not error as matter of law; that it was a fair subject for the judgment of the trial court and its decision thereon was not reviewable here.

An expert called to testify as to the value of a vessel, is not confined to an opinion based upon his personal knowledge. He may speak from information obtained from the general records, containing descriptions of vessels, used and resorted to by ship brokers and owners and underwriters in their business. He may also give his opinion in answer to hypothetical questions based on the evidence in the case.

*It seems* the court will take judicial notice that the books of general record giving the descriptions and standing of all ships, known as "The American Lloyds," "The Green Book" and "The Record Book," are referred to by business men for the purpose of ascertaining the condition, capacity, age and value of ships.

A witness called as to the value of the vessel, was asked, "Do you know what would be a fair market-value in the port of New York of the vessel in question?" This was objected to on the ground that the witness had no personal knowledge. The objection was overruled and the witness answered "Yes." Thereafter the witness was permitted, without further objection, to testify to the market-value. *Held*, the question objected to was merely prelimi-

nary and no error was committed in permitting it to be answered, even if the witness was not qualified to testify as to value.

Where the meaning of a word or phrase, as used in a business, has been settled by a decision of this court, it will be assumed that when used in contracts, made after the decision was pronounced and published, it was used with the meaning so given, and testimony showing that it has a different meaning is incompetent.

Where in an action upon a policy of marine insurance the defense is that the vessel insured was lost through the agency or instrumentality of the assured, the burden of proof upon this issue rests upon defendant.

(Argued December 17, 1887; decided January 17, 1888.)

Appeal from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made June 25, 1885, which affirmed a judgment in favor of plaintiff entered upon a verdict. (Reported below, 13 Daly, 264.)

The nature of the action and the material facts are stated in the opinion. ·

*Edward M. Shepard* for appellant. The declarations of third persons, as well as of parties and their agents, when they form part of the history of the transaction, are connected with the principal facts in controversy, and tend, according to the natural course of events to throw light on the question to be decided are admissible as part of the *res gestæ.* (Greenl. on Ev. § 108; Taylor on Ev. §§ 585, 588; *Beaver* v. *Taylor*, 1 Wall. 637; *Milne* v. *Leisner*, 7 H. & N. 786, 796; *Com. Mut. L. Ins. Co.* v. *Lathrop*, 29 Alb. L. Jour. 429; *McCotter* v. *Hooker*, 8 N. Y. 497; *Palmer* v. *First Nat. B'k*, 4 Week. Dig. 268; *Jewell's Lessee* v. *Jewell*, 1 How. [U. S.] 219; *Comm.* v. *McPike*, 3 Cush. 181; *Comm.* v. *Hachet*, 2 Allen, 136; *Tompkins* v. *Saltmarsh*, 14 East. 275; *Rawson* v. *Haigh*, 2 Bing. 99; *Ridley* v. *Gyde*, 9 id. 349; *Rouch* v. *G. W. R. Co.*, 1 Q. B. 51; *Thorndyke* v. *City of Boston*, 1 Met. 242, 247; *Hishler* v. *Leighton*, 70 N. Y. 610; *Fisher* v. *Mayor, etc.*, 67 id. 73; *Twomley* v. *C. P., etc., R. R. Co.*, 69 id. 158; *Eager* v. *Craw ford*, 76 id. 97; *Shaw* v. *People*, 3 Hun, 272.) It was error

to exclude the evidence of Mr. Ogden as to the meaning of "port risk." The word was a technical word and the evidence was admissible to prove its technical meaning. (*Nelson* v. *Sun Mut. Ins. Co.*, 71 N. Y. 453 ; 2 Bouv. L. D. 405, 406.) It was error not to charge that the burden of proof was on the plaintiffs to establish that the loss was accidental, that it took place without any agency or instrumentality of the plaintiffs. (2 Pars. on Ins. 518 ; *Heineman* v. *Heard*, 62 N. Y. 448 ; *Lamb* v. *Cam. & Am. R. R. & T. Co.*, 46 id. 271, 279–281 ; *Geach* v. *Ingall*, 14 M. & W. 95 ; *Ashley* v. *Bates*, 15 id. 589 ; *Funcheon* v. *Harvey*, 119 Mass. 469 ; *Central Bridge Co.* v. *Butler*, 2 Gray, 130, 132 ; *Crowninshield* v. *Butler*, id. 524 ; *Simpson* v. *Davis*, 119 Mass. 269 ; 1 Greenl. on Ev., § 74, *note a.*) It was error for the court to refuse to charge that if the jury found that the vessel was set on fire by the captain, and that he had an interest in the vessel as owner, the plaintiffs' could not recover. (1 Phillip's Ins., § 1082 ; 2 Arnould's Marine Ins. 714 ; *Mercardier* v. *Chesapeake Ins. Co.*, 8 Cr. 39 ; *Wilson* v. *General Ins. Co.*, 12 Cush. 360 ; *Koehler* v. *Adler*, 78 N. Y. 287 ; *Gildersleeve* v. *Landon*, 73 id. 609 ; *Kavanaugh* v. *Wilson*, 70 id. 177.) It was error to charge that the defendant has the affirmative of the issues presented by a fair preponderance of proof. (*Heinemann* v. *Heard*, 62 N. Y. 448 ; *Banker* v. *Banker*, 63 id. 409 ; *Goodwin* v. *Smith*, 72 Ind. 113.)

*Sidney Chubb* for respondents. The firing of the ship by the master would constitute *barratry* as to the other part owners and this is one of the risks covered by the policy, as it expressly enumerates it among the perils assumed by the defendant. (1 Parsons, 571 ; Machlachlan on Shipping [2d ed., 1876], 256 ; *Jones* v. *Nicholson*, 10 Exch. [H. & G.] 28 ; *Strong* v. *Martin*, 1 D. B. & M. S. Cas. 1245 ; *Ross* v. *Hunter*, 4 Term Rep. 33 ; *Steinback* v. *Ogden*, 3 Caines, 1 ; *McIntyre* v. *Brown*, 1 John. 129 ; *Mercaraier* v. *Chesapeake Ins. Co.*, 8 Cranch. 39 ; *Hobbs* v. *Hannan*, 3 Campbell, 393 ; *Taggard* v. *Loring*, 16 Mass. 336 ; *Saville* v. *Campion*, 2 Barn &

Ald. 503; *Cook* v. *Comc'l Ins. Co.,* 11 J. R. 60; *Stone* v. *Nat. Ins. Co.,* 19 Pick. 34; *Taunton* v. *Sun Mut. Ins. Co.,* 2 Cush. 500.)   A plaintiff is not called on to prove that he has not committed a fraud or crime, the reason being that the law presumes the contrary. (*Tidmarsh* v. *Wash. Ins. Co.,* 4 Mason, 439; *Fish* v. *New England 'M. Ins. Co.,* 15 Pick. 310; 2 Greenleaf on Ev., §§ 35, 74, *note a*; Roscoe on Ev. 52; *Murray* v. *N. Y. Life Ins. Co.,* 85 N. Y. 236.)   Plaintiffs had an insurable interest, and that the action was properly brought in their name. (*Sturm* v. *At. Mut. Ins. Co.,* 63 N. Y. 77.)   Witnesses cannot be called upon to testify as to the meaning of terms which have been judicially interpreted. (*Nelson* v. *Sun M. Ins. Co.,* 71 N. Y. 543; *Bargett* v. *Orient M. Ins. Co.,* 3 Bosw. 597; *Security Bank* v. *Nat. Bank,* 67 N. Y. 458.)   The declaration of third parties not sworn witnesses cannot be received in evidence, even where the declarations themselves might be competent, if proved by the declarant which is not this case.   (1 Wharton's Evidence, 175.) The ruling of a trial judge that a witness is or is not shown to be sufficiently qualified to testify as an expert is a decision of a question of fact and is not reviewable on appeal. (*Nelson* v. *Sun Mut. Ins. Co.,* 71 N. Y. 543; *Searle* v. *Arnold,* 7 R. I. 582; *Dole* v. *Johnson,* 50 N. H. 455; *Jones* v. *Tucker,* 41 id. 546; *Wright* v. *Williams,* 47 Vt. 222; *Anthony* v. *Smith,* 4 Bosw. 503; *Sizer* v. *Burt,* 4 Denio, 426.)

Earl, J.   This action was brought to recover on a policy of marine insurance issued by the defendant to insure a "port risk in the port of New York" upon the ship Zorka.   The policy was in favor of the plaintiffs under their firm name of Slocovich & Company, "on account of whom it may concern," loss, if any, to be paid to them or order.   The risks which by the terms of the policy the defendant assumed were, among others, "perils of the seas, fires, and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said vessel or any part thereof."   The ship was valued in the policy at the sum of $16,000, and was

insured for $11,000. It was alleged in the complaint that after the issuing of the policy, and on or about the 5th day of April, 1883, the Zorka, while lying at anchor in the port of New York, was burned and partially destroyed by the perils insured against. The answer admitted the making of the policy, and that on the day named the ship was burned and partially destroyed by fire, but denied that the plaintiffs had an insurable interest in her to the amount of $16,000 or otherwise; also denied that she was destroyed by perils insured against in the policy, and alleged, by way of counter-claim, that the valuation of $16,000 was excessive to the plaintiffs' knowledge; that the ship was in fact worth not more than $5,000; that she was by the plaintiffs valued at $16,000 fraudulently, and to defraud and induce the defendant to accept such valuation and execute the policy; and that the defendant, relying on the accuracy of such valuation, made and delivered the policy, and that she was burned and destroyed by fire by and through the act and negligence of the plaintiffs, and by and with their knowledge, procurement and assent; and judgment was demanded for the defendant that the complaint be dismissed, that the policy be adjudged and decreed void and of no effect, and that the same be delivered to defendant for cancellation. To the counter-claim the plaintiffs served a reply denying the allegations thereof. At the trial the issues of fact litigated were as to the insurable interest of the plaintiffs in the vessel, as to the cause of the fire, the claim on the part of the defendant being that the ship was set on fire by the captain, at the instigation of and in collusion with the plaintiffs; and as to the value of the ship, the claim of the defendant being that there was a fraudulent overvaluation. Upon these issues of fact there was sufficient evidence for the consideration of the jury, and their determination having been satisfactory to and approved by the General Term concludes us. We deem it important now simply to notice a few of the principal errors relied upon for a reversal of the judgment.

(1.) As above stated, there was an issue upon the trial as to

the value of the vessel at the time of her insurance and of her destruction soon thereafter by fire; and several experts. were called and testified upon both sides, as to her value, who varied widely in their judgments. Among the witnesses. called on the part of the defendant was Francis A. Martin, who testified that he was a marine surveyor; that he had been engaged in that business altogether twenty-five years; that he had followed the sea six or seven years and had been in command of a vessel; that his business had led him to be familiar with the market-values of vessels in the port of New York for ten years; that in his regular business he had been called upon to value vessels, principally by adjusters of averages; that he knew the ship Zorka and had been on board of her a good many times, but not within five or six years. He stated, in answer to a question, that he thought he was able from his experience and personal knowledge, and the personal examination he had made of her, to form an opinion as to her value in 1883. He was then asked this question: "What, in your judgment, judging from your personal knowledge of the vessel, gathered from your personal observation, and your knowledge of the ordinary results of wear and tear in ordinary use, was the market value in the port of New York of the ship Zorka in the month of April, 1883?" This question was objected to by the plaintiff and excluded by the court, on the ground, as we must assume from the record, that the witness did not have sufficient knowledge of the vessel to testify as to her value at the time she was burned. It will be observed that the witness was asked for his judgment, based solely upon his personal knowledge. It was for the trial judge to determine in the first instance whether the witness was competent as an expert to testify to the value of this vessel. He had not seen her for five or six years, and knew nothing about her conditon at the time of her destruction. It did not appear what her condition was at the time he last saw her, and it appeared that subsequently to that time, and after the year 1880, the plaintiffs had expended at least $7,000 in repairing her. Under such circumstances we cannot say that

the judge committed any error in excluding the testimony. If the evidence had been received, it certainly would not have been entitled to very much weight with the jury. While it would not, we think, have been erroneous to receive and submit the evidence to the jury for what it was worth, we cannot say, as matter of law, that the judge exceeded the bounds of a reasonable discretion in holding that the witness was not qualified as an expert to give an opinion as to the value of the ship at the time she was burned. The rules determining the subjects upon which experts may testify, and prescribing the qualifications of experts, are matters of law; but whether a witness offered as an expert has those qualifications is generally a question of fact, to be decided by the trial judge. And it has been held that his decision in reference thereto is not reviewable in an appellate court. (*Searle* v. *Arnold*, 7 R. I. 582; *Dole* v. *Johnson*, 50 N. H. 455; *Jones* v. *Tucker*, 41 id. 546; *Wright* v. *Williams*, 47 Vt. 222.) Without going the full length of these cases, it is sufficient to hold here that the decision of the trial judge in such a matter should not be held to present an error of law, and on that account be reversed, unless it is against the evidence or wholly or mainly without support in the facts which appear. Here, we think, it was a fair matter for the judgment of the trial judge whether this witness had the requisite knowledge and qualifications to give an opinion as an expert as to the value of this ship; and hence we think that judgment is not the subject of review here.

(2.) The plaintiff called one Boyesen as a witness and examined him, as an expert, as to the value of the vessel. He testified that he had been a ship-broker and a ship-owner in the city of New York for ten years past, and for five years before that in London; that in 1883 he knew the fair market-value of ships in the port of New York; that during the last fifteen years he had bought and sold over two hundred ships and steamboats; that he had seen the Zorka once and knew her from report — from the books, the American Lloyds, the Green Book and the Record Book; that those books were published

in reference to the standing of all ships, giving their descriptions and are used by the underwriters and merchants; that he never made any personal examination of the Zorka, but that his knowledge of her was substantially confined to the information he got from the general records used in his business and reports made therein by which he was always guided in buying and selling ships. He was then asked this question: "Do you know what would be a fair market-value in the port of New York during the months of March and April, 1883, of the Zorka?" The defendant objected to the question on the ground that the witness had no personal knowledge of the vessel. The objection was overruled, and the witness answered: "Yes, I know." This was a mere preliminary question and was, of itself, entirely harmless, and no error was committed by the court in permitting it to be answered. Thereafter, without any further objection, and apparently with the consent of the defendant, the witness was permitted to testify as to the market-value of the vessel. But if it should be assumed that all the further evidence was subject to the same objection, we should still be of opinion that no error was committed in receiving it. It is true that the witness had no knowledge of this vessel based upon any personal examination, and that substantially all his knowledge was derived from the reports, books and records to which he referred. But there was evidence showing her age, tonnage, condition and character. There was evidence also tending to show that those books and records contained a full and accurate description of her character, condition, age, tonnage and the materials of which she was made; and that they were commonly referred to by underwriters, merchants and persons buying and selling ships for the purpose of ascertaining the condition and description of the ships; and it is to be inferred that their standing in the market and among business men depend somewhat, if not largely, upon those records. They were regarded as sufficiently reliable for the guidance of underwriters, merchants and buyers and sellers of ships; and they have been so frequently before the courts that we may take judicial notice of

the fact that they are referred to by business men for the purpose of ascertaining the condition, capacity, age and value of ships.

It was not a sufficient objection to the competency of this witness that he had no personal knowledge of the ship. An expert is qualified to give evidence as to things which he has never seen. He may base an opinion upon facts proved by other witnesses, or upon facts assumed and embraced within the case. Questions may be put to him assuming the facts upon which he is asked to base his judgment and express an opinion. In this case the question put to the witness might have assumed the age, tonnage, character, condition and qual-. ity of the vessel, and he could have been asked to give an opinion as to her value based upon such facts; or the facts relating to the vessel appearing in the books and records which he referred to and which were also proved upon the trial, might have been assumed in the question put to the witness and he asked to give an opinion as to her value based upon them. The plaintiff was not asked to pursue this course in putting his question, and there was no objection that the witness did not have sufficient facts before him upon which to base his opinion as to the value of the ship. The sole objection was that he did not have personal knowledge of the vessel. It seems to have been assumed that the character, condition and quality of the vessel were sufficiently proved, and that all the conditions existed which would qualify the witness to give an opinion as to value, except that of personal knowledge, and that, as we have seen, was not necessary. If the defendant had requested that the facts appearing in the evidence should be assumed and stated in a hypothetical question it is fair to assume that his request would have been complied with.

We are, therefore, of opinion that there was no error in receiving the evidence of this witness as to the value of the vessel.

(3.) Alfred Ogden, defendant's vice-president, was called by it as a witness and asked this question : " According to your

understanding of the use of words in the business of insurance, what do the words 'port risk' mean?" This was objected to on the part of the plaintiff as being no longer an open question in this state as the Court of Appeals had settled what "port risk" means in *Nelson* v. *Sun Mutual Insurance Company* (71 N. Y. 453). The court excluded the question and the defendant excepted to the ruling. The counsel for the defendant gave the court no information as to what he expected to prove by the witness, and in no way indicated the particular purpose of the question. The attention of the court was called to the case referred to where it is stated in the opinion that " port risk in a marine insurance policy means a risk upon a vessel while lying in port and before she had taken her departure upon another voyage." That decision having been made several years before this policy was issued, we think it just to hold that the term must have been used in the policy with the meaning thus given to it by this court. If it was the purpose of the question to show that it did have such meaning then it was wholly unnecessary. If it was intended to show that it had any other or different meaning, or if there was any other purpose, the intent and purpose should have been disclosed to the court so that the proper ruling could have been intelligently made. It is impossible to perceive what the object of the question was, as at the time of her destruction the vessel was in the port of New York and had not yet started upon her voyage. She was not rigged for the voyage and her crew had not yet been shipped. It is impossible to perceive why the destruction of the vessel under such circumstances was not a " port risk in the port of New York," and the trial judge did not err, in the absence of any further information than was given him, in so holding. But we think that in all policies issued in this state since the opinion in the case referred to was pronounced and published, these words should have the meaning given them therein, as it is most probable that such would be the meaning attached to them by the parties using them.

Sickels — Vol. LXIII.     9

(4.) The defendant's counsel requested the court to charge the jury as follows : .

"The burden of proof is on the plaintiffs to establish to your satisfaction that the loss of this vessel took place without any agency or instrumentality of the plaintiffs, direct or indirect;" and that "the plaintiffs must establish this fact, that the loss was without any agency or instrumentality of theirs by a clear preponderance of credible testimony." The court refused to charge either of these requests, and to the refusals the defendant excepted; and it is now claimed that in this the court erred. The rule contended for by the defendant would be quite unfair and impracticable in the trial of insurance cases. Where there is an insurance against a loss by fire and it is proved or admitted that the property insured has been destroyed by fire, the loss is brought literally and exactly within the terms of the policy. If in such a case the insurance company claims to be exempt from paying the sum insured because there has been a breach of some condition contained in the policy, or the violation of some obligation or duty imposed upon the insured by the law or contract, the burden rests upon it to establish the facts which it thus relies upon as a defense to the claim under the policy. Every presumption of law is against the commission of a crime, and in all forms of action civil and criminal, every person is presumed to be innocent until his guilt has been established by at least a preponderance of evidence. These humane rules of law would be violated if a person suing upon a policy insuring his property against fire was bound to assume the burden of showing that he was not guilty of the crime of burning his own property. The defendant making that allegation against him must bear the burden of establishing it. (*Tidmarsh* v. *Wash. F. & M. Ins. Co.*, 4 Mason, 439; *Fiske* v. *N. E. Mar. Ins. Co.*, 15 Pick. 310; *Murray* v. *N. Y. L. Ins. Co.*, 85 N. Y. 236; *Heilman* v. *Lazarus*, 90 id. 672; Greenl. on Ev. § 35; Roscoe on Ev. 52.)

The burden in such a case, to prove the crime of incendiarism, should rest upon him who alleges it, just as the burden

of proving insanity rests upon him who assails a will, deed or other instrument upon that ground. (1 Williams Exrs. [6th Am. ed.] 24; 1 Redfield on Wills, chap. 3, § 4; Schouler on Wills, §§ 147, 173.) In 1 Greenleaf on Evidence [Redfield's ed.], (§ 80) the learned author says: "Where the negative allegation involves a criminal neglect of duty, whether official or otherwise, or fraud, or the wrongful violation of actual lawful possession of property, the party making the allegation must prove it, for in these cases the presumption of law, which is always in favor of innocence and of quiet possession, is in favor of the party charged." Here the burning and destruction of the vessel are admitted in the answer, and the defendant makes the allegation and tenders the issue that the fire was caused by the insured; and, in such a case, it is a just rule to hold that the defendant, by the issue it has thus made, has assumed the burden of maintaining its allegations.

We have carefully considered the other allegations of error to which our attention has been called, and are satisfied that they are not well founded. They are sufficiently treated in the opinion below, and need no further attention here.

The judgment should be affirmed, with costs.

All concur except ANDREWS and PECKHAM, JJ., dissenting. Judgment affirmed.