**BRISTOL STEAMSHIP CORPORA-TION, Plaintiff,**

v.

**The LONDON ASSURANCE and H. O. Linard, Defendants.**

**No. 73 Civ. 533.**

United States District Court,
S. D. New York.

Nov. 10, 1975.

**750**

Hill, Betts & Nash, New York City, for plaintiff; Benjamin E. Haller, New York City, of counsel.

Mendes & Mount, New York City, for defendants; Brendan J. Connolly,. New York City, of counsel.

## OPINION

BONSAL, District Judge.

The issue of liability under the parties' port risk marine issurance agreement was tried before the Court on documentary evidence. No witnesses were called by either side. Plaintiff, a Panamanian corporation, was owner of the steamship the "DELFINI", which, while at anchor at the Port of Osaka on February 15, 1968, broke adrift, collided with other vessels, became stranded, sustained damages and was thereafter sold at public auction in Japan on or about January 14, 1969. Plaintiff commenced this action under 28 U.S.C. § 1333 [1] to recover on its port risk insurance agreement, Policy No. H.01622, subscribed to by defendants The London Assurance, a corporation engaged in the business of insurance, and H. O. Linard, an insurance underwriter, as well as other underwriters.[2]

The original port risk insurance agreement was dated November 10, 1967 and covered the DELFINI for one month. At the time of execution of this agreement, the vessel was anchored at the Port of Hirohata, Japan. The agreement provided as to coverage:

> "Whilst at Hirohata within breakwaters or held covered at a premium to be agreed.

> "With leave to shift, in tow or otherwise and including docking, undocking, overhauling, fitting out and whilst on trial trips within port limits or otherwise held covered at a premium to be agreed."

The agreement slip also incorporated by reference the "American Institute Port Risk Clauses (lines 148/165 deleted)", "War &c. Risks as per Institute Clauses [March 7, 1961]", and "P. & I. as per Institute Port Risk Clauses limited to the Hull Value", and the agreement stated "Usual American Clauses as applicable".

The "American Institute Port Risk Form" (hereinafter referred to as "AIPR Form") provides that:

> "[the vessel being insured has] leave to go on or off docks, cradles, . . . and to shift (in tow or otherwise) within said limits; but if the Vessel commence . . . a voyage during the term of this insurance, this Policy shall thereupon terminate as soon as the Vessel leaves her moorings to depart from the above named port." [Lines 37–39]

> \* \* \* \* \* \*

> "In the event of deviation to be held covered at an additional premium to be hereafter arranged, provided previous notice be given." [Line 47]

> \* \* \* \* \* \*

> "The terms and conditions of this form are to be regarded as substituted

---

1. The parties agreed that the "place of Suit [on this policy of insurance] shall be deemed the State of New York" and that the policy would be enforced and construed according to the laws of the United States.

2. Plaintiff and the subscribing underwriters other than the named defendants have each stipulated that they will be bound, each for its proportionate share, by any final judgment rendered in this action, but reserving the right to appeal.

for those of the Policy to which it is attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy." [Lines 166–167].

There is no dispute that the parties extended the term of the November 10, 1967 agreement by initialling renewal slips on December 5, 1967 and on January 10, 1968, which renewal slips provided:

"London: [Date of signing]" "Port Risk Slip dated [Nov. 10, 1967.]"

---

#### " 'DELFINI' "

"It is agreed to extend this insurance for a period of one month from expiry, for the same value and upon the same terms, clauses and conditions and at the expiring rate."

On January 22, 1968, the DELFINI was moved to the Port of Osaka, Japan, located approximately 40 nautical miles

from the Port of Hirohata. The DELFINI was dry-docked for survey of prior damages, which survey was attended by C. Van Campenhout of the American Bureau of Shipping acting on behalf of London Salvage Association.[3]

On February 9, 1968, the parties initialled a renewal slip which provided in its entirety:

"London: [Feb. 9, 1968]." "Port Risk Slip dated [Nov. 10, 1968 (sic)]"

---

#### " 'DELFINI' "

"Further to Agreement dated [January 10, 1968], it is agreed to extend this Insurance until time and date of sailing, for the same value and upon the same terms, clauses and conditions, and at the expiring rate, but risk not to continue beyond [November 9, 1968]."

The validity of this renewal is in dispute.

On February 15, 1968, the DELFINI broke adrift from its anchor at the Port of Osaka, was damaged as a result and was sold by plaintiff at public auction on January 14, 1969 after the underwriters declined plaintiff's tender of abandonment and claim of total constructive loss.

The plaintiff contends: that the insurance coverage agreement dated November 10, 1967 as renewed on January 10, 1968 remained effective until February 8, 1968 even though the DELFINI

had been moved out of the Port of Hirohata on January 22, 1968 without notice to defendants; that defendants had constructive notice of the vessel's new location as of January 23, 1968 when the survey attended by C. Van Campenhout was conducted in the Port of Osaka; and that defendants' agreement to extend the insurance coverage on February 9, 1968 was binding notwithstanding the prior movement of the vessel from the Port of Hirohata.

Defendants contend that the plaintiff's port risk insurance coverage terminated as of January 22, 1968 when the vessel left the Port of Hirohata, and that the February 9, 1968 renewal slip was void *ab initio* because the vessel previously had been moved from the Port of Hirohata without notice to defendants.

An insurance agreement must be interpreted in context, giving effect to the plain meaning of the terms and to

---

3. Plaintiff's Request for Admissions, received in evidence as plaintiff's exhibit 3, states that C. Van Campenhout represented the defendant underwriters, but the trial record fails to establish what actual relationship Van Campenhout had with defendants.

each of the provisions included. 1 Couch on Insurance §§ 15:29, 15:43, at 694, 728 (2d ed. 1959). The available authorities[4] define "port risk" insurance, in contradistinction to voyage or time insurance, to mean "a risk upon a vessel while lying in port, and before she had taken her departure on another voyage." *Nelson v. Sun Mutual Insurance Co.*, 71 N.Y. 453, 459 (1877); *Slocovich v. Orient Mutual Insurance Co.*, 108 N.Y. 56, 65, 14 N.E. 802, (1888). Accordingly, insofar as the parties' agreement stated "[w]hilst at Hirohata within breakwaters" and "with leave to shift, in tow or otherwise and including docking, undocking, overhauling, fitting out and whilst on trial trips within port limits," the Court holds that once the DELFINI left the Port of Hirohata on January 22, 1968, defendants' responsibility under the port risk insurance terminated. *See Canton Insurance Office Ltd. v. Independent Transportation Co.*, 217 F. 213 (9th Cir. 1914) and cases discussed therein; *Hasdorf v. Greenwich Insurance Co.*, 132 F. 122 (S.D.N. Y.1904); *cf. Snyder v. Atlantic Mutual Insurance Co.*, 95 N.Y. 196, 201 (1884).[5]

■■ The Court finds that the "or held covered at a premium to be agreed" clauses in the parties' port risk insurance agreement are inapplicable in the absence of an agreement. The parties by the express terms of their agreement dated November 10, 1967, and as renewed on December 5, 1967 and January 10, 1968, contemplated port risk insurance coverage at the Port of Hirohata. By definition, the location of the vessel is fundamental to issuance of port risk insurance. *See Nelson v. Sun Mutual Insurance Co., supra.* There is no evidence that plaintiff made an agreement with defendants as to a premium to be paid for coverage of the DELFINI at

places other than the Port of Hirohata or that plaintiff gave defendants prior notification of movement of the vessel to the Port of Osaka. Accordingly, under the terms of the agreement the movement of the vessel constitutes a "deviation" and terminated defendants' obligations herein. *See AIPR Form, Lines 37–39, 47.* In addition, case law establishes that a material deviation, such as movement of the vessel from the location expressly covered by the parties' agreement, discharges underwriters from further responsibility. *See DuPont de Nemours International S.A. v. S.S. Mormacvega*, 493 F.2d 97, 101 (2d Cir. 1974) and cases cited therein; G. Gilmore, The Law of Admiralty 66 (2d ed. 1975). *See also Canton Insurance Office Ltd. v. Independent Transportation Co., supra; Hasdorf v. Greenwich Insurance Co., supra.* Accordingly, defendants' responsibility for coverage of the DELFINI terminated when the vessel left the Port of Hirohata on January 22, 1968.

■ Plaintiff's suggestion that the port risk insurance coverage established by the November 10, 1967 agreement was reinstated by the defendants' initialling the renewal slip on February 9, 1968 is without merit. There was no competent proof at trial that when plaintiff's London brokers and defendants' agents initialled this renewal slip plaintiff had informed defendants, or that defendants otherwise had notice, that the vessel was in fact located in the Port of Osaka, not in the Port of Hirohata. *See G. Gilmore, supra* at 62; N. Healy, "The Hull Policy: Warranties, Representations, Disclosures and Conditions," 41 Tulane L. Rev. 245, 251–52 (1967). Cf. N.Y.Ins.Law § 150(3) (McKinney 1966).

4. It appears that state insurance law applies. *See Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).

5. Plaintiff's contention that Osaka is within the "port limits" of the Port of Hirohata is

without merit. The Port of Osaka is approximately 40 nautical miles from the Port of Hirohata and there are at least three cities or towns situated between these ports.

The foregoing constitutes the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

Settle judgment on notice.